# DODGE *v.* TULLEYS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 222. Argued and submitted March 22, 23, 1892. — Decided April 11, 1892.

Interest at the rate of 8¾ per cent in Nebraska is not usurious.

The *cestui que trust* is not a necessary party to a bill by a trustee to foreclose a mortgage.

A loan was made February 1, and the mortgage and notes were dated on and bore interest from that day; but as there were sundry incumbrances part of the money was retained; one sum applied to a payment March 4; another sum March 11; a large proportion of the whole debt was not remitted to the borrower until June 8; and on the 8th of October a final sum of $3000 was sent to the borrower's agent to pay a judgment of $2466, which was paid, the agents retaining the balance. On a suit to enforce the lien of the mortgage a decree was entered for the plaintiff with an allowance of $1000 as an attorney's fee. *Held*,

(1) That no rebate of interest should be allowed on the payments made March 4, March 11 and October 8;

(2) That a rebate should be allowed on the remittance of June 8;

(3) That the attorney's fee should be reduced to $500.

THE court stated the case as follows:

On February 17, 1886, the appellants, residents of Hall County, Nebraska, executed and delivered two instruments, each dated February 1, 1886, and together given for a loan of $10,000. Both instruments conveyed the same lands. The first was in form a trust deed, executed to L. W. Tulleys, trustee, to secure payment of a bond of $10,000, given to Clarence K. Hesse, due in five years, with interest at $6\frac{1}{2}$ per cent, payable semi-annually. The second was in form a mortgage to Burnham, Tulleys & Co., to secure ten notes of $112.50, due respectively at the times the semi-annual interest became due on the $10,000 bond. Burnham, Tulleys & Co. were loan brokers doing business at Council Bluffs, Iowa, and took these notes and this mortgage as payment of their commissions, the notes, with the interest named in the $10,000 bond, making the loan in fact, as was intended, at $8\frac{3}{4}$ per cent. Clarence K. Hesse, the obligee in the bond, was in the employ of Burnham, Tulleys & Co. as examiner of lands. He was not the lender of the money, and was named as obligee simply for convenience in transferring title. Default having been made in the payment of interest, a suit of foreclosure was commenced in the name of L. W. Tulleys, trustee, to which suit the present appellants were the sole defendants. The bill described complainant as "trustee for Cornell University, and for Burnham, Tulleys & Company," and set out two separate causes of action, the first on the trust deed, and the second on the mortgage. In respect to the first, after alleging the execution of the bond and the trust deed, it averred that Cornell University was the present holder of the bond. With reference to the second, the bill contained this allegation as to complainant's title: "And your orator further shows the court that he is trustee for Burnham, Tulleys & Co., the owners of said promissory notes and the mortgage deed securing the same, by virtue of the purchase of the same before maturity." It is also alleged that Tulleys was a citizen of Iowa, and the defendants citizens of Nebraska. To this bill a demurrer was filed by defendants, on the ground,

first, of a want of equity; second, that Cornell University and Burnham; Tulleys & Co. were not made parties; and, third, that a cause of action in favor of Cornell University-had been improperly joined with one in favor of Burnham, Tulleys & Co. This demurrer was overruled; and leave given to answer. Subsequently the court held that Cornell University ought to be made a party to the suit, and leave was given to amend the bill by making new parties plaintiff; and thereafter Cornell University and Burnham, Tulleys & Co. appeared and filed what was called an amendment to the bill, but which simply reaffirmed in their behalf the allegations of the original bill. The answer, admitting the execution of the papers, alleged that Hesse, the obligee, was a mere nominal party, the real lender being Burnham, Tulleys & Co.; and that $534 of the $10,000 loaned had never been paid to the defendants; and also pleaded, generally, usury. Proofs were taken, and a decree entered in favor of the complainants for the full amount claimed, with a thousand dollars allowance for attorney's fees. The defendants appealed to this court.

*Mr. Albert Swartzlander*, (with whom was *Mr. C. S. Montgomery* on the brief,) for appellants.

*Mr. Smith McPherson* for appellees, submitted on his brief.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

Appellants allege several matters as grounds for reversal. They claim that the commission notes represent unlawful interest, or that in any event they should be credited with rebates. Adding the commission notes to the interest named in the bond aggregates only 8¾ per cent on the money actually loaned, and ten per cent is allowable under the laws of Nebraska. (Comp. Stats. of Nebraska, p. 483, c. 44, sec. 1.)

The claim of a credit for rebates springs from these facts. The title to the land at the time the loan was contracted for and the securities given was only partly in the defendants.

One tract of it was school and another railroad land, in respect to which they had only a contract of purchase, and upon which balances were still due to the State and to the railroad company. These were paid by the lender out of the loan, and deeds perfecting title obtained. Then a portion of the loan was handed over to the defendants. Three thousand dollars was by agreement retained on account of a judgment against the defendant, F. C. Dodge, which was a lien upon the land, but which had been appealed by him to the Supreme Court. After this judgment had been affirmed by that court, it was paid out of the moneys thus retained. Dates and amounts are as follows: The securities are dated February 1, 1886, and call for interest from that time. They were not in fact executed until February 17. The amount due the State was $1417.25, and was paid March 4. That due the railroad company, $1388, and paid March 11. On June 8, $4194.75 was sent to defendants; and the judgment, $2466, was paid October 8. On the face of the papers, interest was due from February 1. There was no agreement between the lenders and the borrowers with respect to a different date for its commencement. The borrower knew the condition of his title, and the fact of a judgment lien. The moneys due the State and the railroad company were paid within a reasonable time, and as soon as title could be obtained from the vendors. In the absence of an express agreement to the contrary it must be assumed that the borrower, knowing that there would be some short delay in making payments and perfecting title, intended and agreed that such delay should work no change as to the time at which interest was to commence to run. The same is true of the $3000 retained by express agreement for the judgment. It cannot be that the lenders were to hold that money without interest, waiting his pleasure in respect to the judgment. The delay was for his accommodation, and at his instance. But with respect to the moneys given to him on June 8, we think equity requires a rebate of interest on account of the long delay in the matter. When a loan is negotiated, the understanding is that the money is to be paid promptly after the execution of the papers. As the

parties lived in different cities, of course a little time for transfer would be expected, and the perfecting of the title is implied; but there is no excuse for such a long delay as this. The judgment, which was a lien upon the property, justified the lenders in retaining enough money to satisfy it. It was only $2000 in the first instance, and by agreement $3000 was retained in order to cover interest and costs; but the balance of the loan should have been promptly forwarded to the borrower. Because it was not so forwarded, we think the defendants are entitled to a rebate on the amount due to Burnham, Tulleys & Co., for the interest on the sum withheld during the time it was so withheld, a period of about three months. Eighty-five dollars would be a fair amount to thus credit.

Another claim of appellants is that they had in fact paid all of the interest due at the time the suit was commenced. It appears that the $3000 retained for the judgment was sent in a single draft to West & Schlodtfelt, real estate men at Grand Island, through whom the application of defendants had come to Burnham, Tulleys & Co. Out of that they paid the judgment, $2466. The balance, $534, they retained. Why it was retained is not fully disclosed by the testimony. It would seem that they had rendered some services to the borrowers, and an inference is possible that there was a dispute as to the matter of compensation. Be that as it may, and although West & Schlodtfelt wrongfully retained the money, the burden of this wrong must be borne by the defendants, and is not chargeable to Burnham, Tulleys & Co., for they sent the money to West & Schlodtfelt upon the written direction of the borrowers; and there is no evidence that West & Schlodtfelt ever paid the interest, as the defendant, Freeman Dodge, testifies they promised to do.

Another defect claimed is that the citizenship of Hesse, the obligee in the bond, is not alleged; but this is unnecessary. The suit is in the name of Tulleys, trustee, to whom the legal title was conveyed in trust, and who was, therefore, the proper party in whose name to bring suit for foreclosure. It happens in this case that there was but one party beneficiary under

the trust deed; but it often is the case, as in railroad trust deeds, that the beneficiaries are many. But whether one or many, the trustee represents them all, and in his name the litigation is generally and properly carried on. The fact that the beneficiary in a trust deed may be a citizen of the same State as the grantor, would not, if the trustee is a citizen of a different State, defeat the jurisdiction of the Federal court. In any event, the bond being negotiable, the citizenship of the obligee becomes immaterial after transfer of title from him. *Mersman* v. *Werges*, 112 U. S. 139; *School District* v. *Hall*, 113 U. S. 135. Hesse had, by the allegations of the bill, parted with his interest in the bond, and it was unnecessary to either make him a party or allege his citizenship. It may be that the allegation of the transfer of the mortgage from Burnham, Tulleys & Co. to Tulleys is defective, and perhaps it would have been more correct to have made them parties defendant, and permitted them to set up their mortgage by cross-bill; but they were by permission of the court made parties, and with the Cornell University, the present holder of the bond, appeared in the case and asserted their rights and interest in the property. While the proceedings may have been somewhat irregular, yet no objection seems to have been taken to the manner in which this was done. As all the parties in interest were parties to the record, and all the facts fully disclosed by the testimony, it would be sacrificing substance to form to set aside the decree because of a mere irregularity in the arrangement of the parties, or the frame of the pleadings. So far as Cornell University is concerned, its citizenship, if it were necessary, is sufficiently disclosed by the allegation that it is a corporation duly organized under the laws of the State of New York.

The remaining proposition of appellants, is that the court erred in allowing a solicitor's fee of $1000. There is a stipulation in the trust deed for the payment of an attorney's fee of $1000, in case of foreclosure, but such stipulations have been held by the Supreme Court of Nebraska to be unauthorized. *Dow* v. *Updike*, 11 Nebraska, 95; *Hardy* v. *Miller*, 11 Nebraska, 395. seems that in 1873 an act passed the legis-

lature of Nebraska, expressly authorizing in any written instrument for the payment of money a stipulation for not exceeding ten per cent as an attorney's fee in case of suit. Neb. Gen. Stats. 98. This act was repealed in 1879. Laws of Neb. 1879, p. 78. In the cases cited, the Supreme Court of the State held that by the repeal of the statute the contract right to recover attorney's fees was taken away. So, as this court follows the decisions of the highest court of the State in such matters; (*Bendey* v. *Townsend,* 109 U. S. 665,) the provision in the trust deed for the payment of $1000 as attorney's fees cannot be regarded as of binding force. But while contract rights are settled by the law of the State, that law does not determine the procedure of courts of the United States sitting as courts of equity, or the costs which are taxable there, or control the discretion exercised in matters of allowances. Those courts acquire their jurisdiction and powers from another source than the State. There is no statute of Nebraska in respect to the matter. Even if there were one expressly prohibiting courts of equity from making allowances to trustees or their counsel, such prohibition would not control the proceedings in Federal equity courts. They proceed according to the general rules of equity, except so far as such rules are changed by the legislation of Congress, and while they may enforce special equitable rights of parties given by state statutes, (*Holland* v. *Challen,* 110 U. S. 15,) yet their general powers as courts of equity are not determined and cannot be cut off by any state legislation. It is the general rule of equity, that a trustee called upon to discharge any duties in the administering of his trust is entitled to compensation therefor, and included therein is a reasonable allowance for counsel fees. This is constantly enforced in the Federal courts in the various railroad foreclosures that have been and are proceeding therein; and this, irrespective of any state legislation. The subject was exhaustively considered by Mr. Justice Bradley, in the case of *Trustees* v. *Greenough,* 105 U. S. 527. The English and American authorities were fully reviewed, and the power and duty of the court to make reasonable allowances (including counsel fees) to trustees or others acting in that capacity

was affirmed. See, also, *Central Railroad* v. *Pettus*, 113 U. S. 116. It is unnecessary to more than refer to these decisions.

In the case before us, a trustee comes into a court of equity and asks its aid in enabling him to discharge the duties of his trust; and, according to the settled law of this court, he is entitled to an allowance for reasonable counsel fees. But we think $1000 is too much. Indeed, in the bill of complainant, the trustee alleges that $500 is a reasonable attorney's fee for the foreclosure of the trust deed; and we think that under the circumstances no more should be allowed.

The decree will, therefore, be modified by reducing the amount found due Burnham, Tulleys & Company to $1094.16, and the attorney's fee from $1000 to $500. In other respects the decree will be affirmed. The appellants will recover their costs in this court.                    *Affirmed as modified.*