BOUND v. SOUTH CAROLINA R. CO. et al.    Ex parte WALKER.   Ex
                          parte CALDER.

(Circuit Court, D. South Carolina.    May 19, 1894.)

**1. RAILROAD COMPANIES—MORTGAGES—TRUSTEES—COMPENSATION.**

On maturity of bonds secured by a railroad mortgage after most of them had been retired, and the holders of nearly all outstanding had agreed to an extension of time, the trustee of the mortgage, on his own motion, and without request by the bondholders, brought suit to foreclose. The suit was never prosecuted to a decree, proceedings on a second mortgage being afterwards instituted in the federal court. *Held*, that the suit by the trustee was unnecessary, and he should not be allowed compensation or counsel fees therefor.

**2. SAME.**

In foreclosure proceedings on a second mortgage of a railroad, the lien of the first mortgage was not questioned. The holders of the bonds secured thereby had consented to an extension of time. *Held*, that the sole duty of the trustee under the first mortgage was to see that the amount due thereunder was determined, and a decree made conserving the interests of the bondholders; and for anything further he should not be allowed compensation or counsel fees.

This was a suit by Frederick W. Bound against the South Carolina Railway Company and others to foreclose a second mortgage on said company's railroad. H. Pinckney Walker and James M. Calder, trustees in the first mortgage of said railroad, filed petitions for compensation and counsel fees.

McCradys & Bacot and E. W. Hughes, for petitioners.
J. W. Barnwell and Mitchell & Smith, for respondent.

SIMONTON, Circuit Judge. The petitions are on behalf of two trustees of what is known in this case as the "old first mortgage" of the South Carolina Railroad Company. The petitions seek compensation to the trustees, including remuneration of the counsel employed by them. The two trustees did not act together, and their cases will be separately considered.

### H. P. Walker, Trustee.

The old first mortgage of the South Carolina Railroad Company was executed in 1868, for the purpose of securing certain bonds of that company issued for taking up, by exchange or otherwise, certain bonds of the Louisville, Cincinnati & Charleston Railroad Company, for which the company was liable, guarantied by the state of South Carolina. The bonds aggregated $3,000,000 in all, and some of them were payable in sterling, and some in money of the United States. They were used as designed, and nearly every guarantied bond was retired. The trustees of this mortgage were Henry Gourdin, H. Pinckney Walker, and James M. Calder. The mortgage is an ordinary railroad mortgage. No special provision is made in it for compensation to the trustees, and such compensation must depend on the law and practice of this court. Dodge v. Tulleys, 144 U. S. 451, 12 Sup. Ct. 728. Under a mortgage of this character, the duties of the trustees are usually dormant until and unless

there be a default in payment of the bonds secured by it. Jones, R. R. Sec. § 375. It is made primarily to serve the purposes of the mortgagor. The trustees are selected by the mortgagor; and, prior to any active interference by the trustees for the protection of the bondholders, any compensation to which they may be or may become entitled should be met by the mortgagor. With regard to this mortgage, no such default in the payment of interest on the bonds has ever occurred as to require the active intervention of the trustees. Default having occurred on the mortgage second in lien to it, proceedings were instituted in this court on 5th July, 1878, by Calvin Claflin et al. against the South Carolina Railroad Company, and that second mortgage was foreclosed. The first mortgage was not disputed or disturbed, the sale under foreclosure being subject to it. The trustees of the first mortgage appeared in that suit representing their mortgage, the bonds not yet being due; and the counsel who appeared for them (each of the three having his own attorney) were fully compensated and the trustees protected. Afterwards, one Coghlan, who held some of the guarantied bonds of the Louisville, Cincinnati & Charleston Railroad Company, obtained judgment in this court on his bonds. Henry Gourdin having departed this life, H. P. Walker, as trustee, without the other trustee, began proceedings in this court seeking to intervene in the Coghlan suit; but without success. On appeal to the supreme court of the United States, the action of this court was sustained. Proceedings for foreclosure of the mortgage, all the bonds having matured, were then instituted by Mr. Walker in the circuit court of the state of South Carolina, sitting for Charleston county; Calder, trustee, being made a party defendant.

At this time, of the $3,000,000 bonds issued under that mortgage, a very large number had been retired and paid, leaving less than $300,000 in value outstanding; and of these the payment of nearly all of them had been extended by the holders. The trustee, Mr. Walker, acted suo motu, neither claiming nor averring the request of any one of the bondholders as the reason for his action. Pending this case, the main cause in which these petitions are filed was begun in this court by F. W. Bound, holder of second consolidated mortgage bonds of the South Carolina Railway Company, seeking foreclosure of this second mortgage. This court took possession of the res, and appointed a receiver. Thereupon the case in the state court died a natural death, and the whole litigation was completed here. In a proceeding of this kind, in which compensation is sought, not under express contract, and scarcely under an implied contract, but under the principle which controls the court ex equo et bono, the trustee himself cannot be remunerated, nor can he be protected from obligations to his counsel, unless the course adopted by him and the services therein rendered are required by his official position, and are rendered necessary for the protection, preservation, or the benefit of his trust. Carefully considering all that the trustee, H. P. Walker, did up to this time, nothing appears to have been done which was either requisite or necessary for the protection, preservation, or benefit of his trust. The bonds, reduced 90 per

cent. in number, were perfectly safe. There having been no default in interest on them, they needed no protection; and the action of the large majority of the holders of the time for the payment after maturity shows that no benefit could be derived to the holders by enforcing payment of them. When this Bound Case was instituted, and especially when the holders of the first consolidated mortgage insisted on enforcing their lien, action on the part of the trustees of this first mortgage became requisite and necessary. What action on their part was requisite and necessary? The amount due on them was $270,000. They were, next to Coghlan's claim of some $60,000, an unquestioned first lien on property carrying subordinate liens of some $6,000,000. No party to the suit could get any relief without providing for them; and, when they were to be provided for, the question was as to the amount due. No part of the money coming to these bonds was to be paid to or distributed by the trustees. All that they were to do was to see a proper decree entered protecting and conserving the rights of these bondholders.

With regard to questions made between the other classes of bondholders, they were supremely indifferent. Such was the character of the service required of them; and this service was well and efficiently performed. Everything else was done outside of the requirement of their duty; and, valuable as it was in the cause, there can be no authority calling upon the bondholders ex equo et bono to pay for it. The whole record has been carefully reviewed, and the testimony adduced considered. It is manifest that Mr. Walker was most vigilant and active in the performance of the duties of the trust, bearing almost the whole burden, and his attorneys exhibited the same degree of vigilance and activity.

### James M. Calder, Trustee.

At his first appearance in this cause, Mr. Calder pleaded his ill health and his absence as reasons for forbidding him to take an active part in the litigation. He took the wisest course,—employed competent counsel, and thenceforward submitted himself to the discretion of the court, keeping, however, a watchful eye on the interests of his client.

The duty devolving upon the court is invidious to a degree. With strong sympathy for the counsel, created by years of active professional life, and with personal esteem and affection for the gentlemen interested in these presents, the court is called upon to administer the law "with a jealous regard to the rights" of these bondholders. Trustees v. Greenough, 105 U. S. 537. While on the one hand the trustees must be protected from any loss or pecuniary responsibility in discharging the duties devolving upon them, on the other the bondholders, who are under no contract obligation to them, must be protected from payment for services which were not essentially necessary and proper for their preservation, protection, or benefit. Much of the service of the counsel was of this character; much of it was not. Reviewing the whole case, considering that the effective service of Mr. Walker had been rendered when death

cut short his career, and the peculiar interest he and the attorney representing him exhibited in the proceedings, there is allotted to his counsel, Messrs. McCradys & Bacot, $2,500, and to his personal representative $1,000; to Mr. Calder's counsel, E. W. Hughes, Esq., $750; and to Mr. Calder himself, $800.

The special master will apportion this gross amount upon the first-mortgage bonds of the South Carolina Railroad Company. Some of these bonds were payable in sterling. Under an erroneous construction of this mortgage, a valuation had been filed on these bonds of $4.44 to the £. By the special effort of Messrs. McCradys & Bacot, this valuation was changed to $4.86 to the £. This service was rendered specially to these bonds, and must be specially paid by them. The special master will deduct from the sum going to each sterling bond 10 per cent. of the difference between $4.44 and $4.86, and pay the same to Messrs. McCradys & Bacot.