PHINIZY et al. v. AUGUSTA & K. R. CO. et al. CENTRAL TRUST CO. v. PORT ROYAL & W. C. RY. CO. GREENVILLE COUNTY et al. v. PORT ROYAL & W. C. RY. CO. et al.

(Circuit Court, D. South Carolina. March 26, 1896.)

1. RAILROADS—FORECLOSURE OF MORTGAGE—ALLOWANCE TO TRUSTEES.

The allowance made by a court to trustees in a railroad mortgage for their services in relation to its foreclosure will be proportioned to the amount of service actually required and rendered; and where they do not take possession of the property, and no duties are required of them in its administration or in the distribution of the proceeds, and no contest is made to their recovery, their services being confined to the employment of counsel, a comparatively small allowance will be made them, although they realize the full amount of the mortgage debt.

2. SAME—ALLOWANCE OF COUNSEL FEES.

Where the question of the fees to be allowed counsel for their services in the foreclosure of a railroad mortgage in a federal court is submitted to the court, it is not bound by any contract made by the trustees, or by any state law or practice, but is governed entirely by the rules of federal courts of equity, which require that the allowance shall be a reasonable one, in view of all the circumstances of the case, and the usages and practice of the bar to which they belong.

3. SAME—ALLOWANCE TO OPPOSING COUNSEL.

Allowance may properly be made from the fund realized on the foreclosure of a railroad mortgage to compensate all counsel who contributed to its recovery, but counsel who appear for parties who intervene and unsuccessfully contest the validity of the mortgage do not come within this rule.

In Equity. On applications for allowances to the trustees and counsel from the fund produced by the sale of the property of the defendant railroad companies under the decrees of foreclosure.

W. K. Miller, W. G. Charlton, and Leonard Phinizy, for trustees and others.

Lawton & Cunningham, for defendants.

N. B. Dial and C. C. Featherstone, for cross-complainant counties.

SIMONTON, Circuit Judge. Among the matters to be settled in these cases is the question of compensation of the trustees of the Augusta & Knoxville Railroad Company, including the compensation for their counsel. Perhaps no more embarrassing question can be presented to a court. Were it governed by fixed rules, this embarrassment would be measurably removed. But in a matter of this sort, regard being had to the amount of compensation, each case is a rule unto itself. A suit was brought originally by the trustees of the first mortgage of the Augusta & Knoxville Railroad Company, seeking foreclosure of their mortgage. The Augusta & Knoxville Railroad owned a line of road from Augusta, Ga., to Greenwood, S. C. It there met other lines of railroad, and by an agreement between it and these concurring roads a combination was formed, and a new corporation created, embracing all the contracting roads, and known as the Port Royal & Western Carolina Railroad. Each of the combining roads had upon it a mortgage securing certain coupon bonds. By the combination agreement, all these mortgages, except that of the Augusta & Knoxville, were taken up and satisfied with a

new issue of bonds by the new corporation, secured by a mortgage of the entire system. The mortgage creditors of the Augusta & Knoxville Railroad Company did not go into this agreement, but retained their lien, so that the Port Royal & Western Carolina Railroad had upon it two mortgages,—the one covering that part of it once known as the Augusta & Knoxville Railroad, and being a first lien thereon; the other covering the whole system, and having a second lien on the part once known as the Augusta & Knoxville Railroad, and a first lien on all the rest of the system. The principal of the bonds of the Augusta & Knoxville Railroad was $———. The bill for foreclosure made the Augusta & Knoxville Railroad Company and the Port Royal & Western Carolina Railroad Company parties defendant. Subsequently the Central Trust Company of New York, trustee of the mortgage made by this last-named company, was made a party defendant. On the day preceding the filing of the amendment the Central Trust Company of New York filed its bill for foreclosure of the mortgage of the Port Royal & Western Carolina Railroad Company, and by an order of the court the two cases, although not consolidated, were treated always together. Into these proceedings came the counties of Greenville, Spartanburg, and Laurens, of South Carolina, and the towns of Anderson and Greenville, and filed an answer, and afterwards a cross bill, resisting the prayer of the bill by the Central Trust Company of New York, and attacking the validity and lien of many of the bonds held by it. The proceedings finally terminated in an order for sale. The priority of lien of the bonds of Augusta & Knoxville Railroad Company was never disputed over that part of the system originally known by that name. The stress of the controversy in the case was between the contention of the counties and the holders and owners of the bonds secured by the mortgage of the whole system. The result of the sale had under the order has been to secure for the bonds of the Augusta & Knoxville Railroad Company payment in full of everything due on each of them.

This is not a suit like that in Trustees v. Greenough, 105 U. S. 532, 26 L. Ed. 1157; Railroad Co. v. Pettus, 113 U. S. 124, 5 Sup. Ct. 387, 28 L. Ed. 915, and Hobbs v. McLean, 117 U. S. 581, 6 Sup. Ct. 870, 29 L. Ed. 940, in which a person interested in a fund, but charged with no special duty with regard to it, undertook the risk, labor, and expense of recovering, restoring, or securing the fund, as well for himself as for all others interested. The trustees in the present case, when they accepted the trusts of the mortgage deed, assumed the duty which they subsequently performed. And, having the alternative of taking possession of the property or asking the aid of the court, they wisely pursued the latter course. They selected able counsel, committed to them the interests in their charge, and were fully represented in the subsequent litigation. No special duties were required of them. No labor was thrown on them. As no litigation or dispute over the special interests they represented arose in the progress of the case, they could not have been called upon to advise their counsel on difficult or embarrassing questions. They have no part in the receipt or distribution of the proceeds of the sale. In Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559, trustees of a

railroad mortgage exercised the right to enter upon the property, and afterwards sought the aid of the court in its administration. They remained in actual possession for over five years, and operated, administered, and restored the property, bringing it to an efficient condition. They subsequently sold it for the sum of $5,000,000, and distributed the proceeds. The supreme court allowed the two trustees the gross sum of $75,000 between them for their services as trustees and receivers for a little more than five years. If the analogy of this case is pursued, a liberal allowance to these trustees, who performed no part of the duties of receivers, will be $5,000 between them, and it is so ordered. Colston v. Railroad Co.[1]

As a matter of course, the counsel whom they employed must be compensated. With great force, counsel seek to measure their compensation by a percentage on the amount of the recovery, or rather of the sum which the bondholders will receive; and they press upon the court the rule of compensation in Georgia, and the contract which they could have made with the trustees, exhibiting the approval of the trustees of a charge of 5 per cent. on the recovery. It is unnecessary to say that no contract or understanding of the trustees can bind this court. They have come in, and have submitted their case to it, and have craved its aid. Nor is the court bound by any state rule or law on this subject. As it would not be bound by a state law or practice expressly prohibiting courts of equity from making allowances to trustees or their counsel (Dodge v. Tulleys, 144 U. S. 457, 12 Sup. Ct. 728, 36 L. Ed. 501), it is not in any way regulated by them in the amount of the allowance, or the mode in which it is reached. There is no such rule in this court as the one contended for. The rule here is that a reasonable allowance be made (Dodge v. Tulleys, supra), or, as it is expressed in Trustees v. Greenough, 105 U. S. 536, 26 L. Ed. 1157:

"Allowances of this kind, if made with moderation, and a jealous regard to the rights of those who are interested in the fund, are not only admissible, but agreeable to the principles of equity and justice."

The testimony contains estimates of experienced and able witnesses, some of whom have filled judicial positions. It has received the careful and respectful consideration it so well deserves. But it is impossible to concur in the large estimate which has been made. Indeed, allowances of the character they suggest are inconsistent with the uniform practice of this circuit, and are against the current of authorities from the supreme court of the United States. In Williams v. Morgan, quoted above, Messrs. John E. Parsons, of New York, and Hon. John A. Campbell, formerly Mr. Justice Campbell, were of counsel. They were allowed, the one $15,000, the other $20,000. That case was full of litigated points, and counsel were called upon to advise as to the administration and management of the railroad system for over five years. In the case before the court there were three counsel representing the trustees. Their management of their case, shown as well by the tact and discretion as by the learning which they displayed, deserved and has the com-

[1] No opinion filed.

mendation of the court. Although no grave issues or marked resistance were encountered, they deserve liberal compensation. In deference to the testimony which they have adduced, and recognizing that, in putting an estimate upon the value of their services, consideration must be shown to the usage and practice of the bar to which they belong, an allowance will be made beyond that usually given in this circuit. This allowance is fixed at $20,000 in the aggregate, to be apportioned among them as they determine.

The counsel who represent the counties and towns have submitted to the court a claim for compensation out of the general fund. This fund belongs primarily to the bondholders. It is, no doubt, true that the fund must be used to compensate all who contributed to its recovery. When the services of counsel were rendered, not in aid of the bondholders in securing their rights, but in interposing obstacles and obstructions in their enforcement,—when these counsel acted in hostility to the bondholders,—they do not come within this rule. Hobbs v. McLean, 117 U. S., at page 581, 6 Sup. Ct. 870, 29 L. Ed. 940. The rule and exception to it are fully stated in this case, at page 582, 117 U. S., page 877, 6 Sup. Ct., and page 946, 29 L. Ed.:

"When many persons have a common interest in a trust property or fund, and one of them, for the benefit of all, and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust, or by proportional contribution from those who accept the benefits of his efforts. See Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, where the subject is discussed by Mr. Justice Bradley, and the cases cited, and Railroad Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915. But where one brings adversary proceedings to take the possession of trust property from those entitled to it, in order that he may distribute it to those who claim adversely, and fails in his purpose, it has never been held, in any case brought to our notice, that such person had any right to demand reimbursement of his expenses out of the trust fund, or contribution from those whose property he sought to misappropriate."

The counties and towns intervened and came into this case of their own motion. They resisted the foreclosure of the general mortgage, and denied the validity of the bonds and the rights claimed by complainant. Their contention was not successful. They surely did not contribute to the protection, security, or recovery of the fund which the bondholders will get. They are not entitled to fees out of this fund, or as against the purchasers of the property.