## BARRY v. FRIEL.

### (Circuit Court, D. Nebraska. April 30, 1902.)

### No. 435t.

1. BUILDING AND LOAN ASSOCIATION—LOAN—COMPUTATION OF AMOUNT DUE—PAYMENTS ON STOCK, ETC.

In ascertaining the amount due on a mortgage to an insolvent building and loan association, executed by one of its stockholders, the mortgagor's stock, or what he has paid thereon, either as payments, or as fines, dues, or penalties, should not be considered.[1]

2. SAME—PREMIUMS.

Premiums paid by the mortgagor on account of his loan should be credited thereon, but without allowing him interest on the premiums.

3. DECREES—CONCLUSIVENESS.

A decree canceling a mortgage executed to an Illinois building and loan association by one of its stockholders, obtained in an action brought against the association and its receiver in a Nebraska state court,—notice of the suit being by publication, and neither the association nor the receiver having knowledge thereof, and no permission being given to make the receiver a party,—was not an adjudication, and did not bind a federal court in a subsequent action to foreclose the mortgage, brought by the receiver.

In Equity.

Greene, Breckenridge & Kinsler, for complainant.

L. E. Kirkpatrick, for defendant.

McPHERSON, District Judge. The Interstate Building & Loan Association of Bloomington, Ill., was incorporated under the laws of that state. In the circuit court of McLean county, Ill., at the suit of the state auditor against the corporation, a decree was rendered declaring the corporation insolvent, and appointing complainant herein the receiver, who by due proceedings was later on appointed by this court

[1] See Building and Loan Associations, vol. 8, Cent. Dig. §§ 62, 63, 66 [f, i].

as receiver. Defendant is both a stockholder, on account of which he paid dues, fines, and penalties, and a mortgagor or borrower, on account of which loan he has paid premiums and interest. This is a bill in equity to foreclose the mortgage, after ascertaining the amount due. What is the amount due? is the principal question in the case. And that is readily ascertained when the basis for making the computation is established. That the authorities are in conflict need only be stated; and it is no purpose of mine to discuss them, or to attempt to work out the differences, and show why the one rule is to control, and not the other.

I do not think defendant's stock, or what he has paid thereon, either as payments, or as fines, dues, or penalties, is entitled to enter into consideration of any question in this case. The capital stock is a trust fund. It is contributed by the stockholders on account of their holdings as stock. This trust fund is used, in whole or in part, for the payment of the debts of the corporation. After the debts are paid, then the stockholders are creditors of the corporation; and they will participate in the division of such trust fund according to their holdings, and the payments on account of stock. But such division of the trust fund or capital stock will be when the corporate debts are paid, and will be done under the supervision of the courts in Illinois. And in no event can defendant now and in this court participate in sharing of the trust fund created by the capital stock. This cannot be allowed. But a very different question arises as to defendant now and here being credited with the premiums he has paid on account of his loan. The agreement was that defendant have certain money. This he received. He agreed to pay a stipulated rate of interest. In addition, he agreed to pay a premium for this money. This was done by making a bid therefor, which was accepted. The money thus borrowed was to be, and was, secured in part by a real estate mortgage, and also by pledging his corporate stock. Taking defendant's bond and his mortgage and his stock and the by-laws of the corporation all together, and it is reasonably plain that the premium on the loan was to be met, or nearly so, by the increase in value of the stock. So that if the concern had been kept going, and the management anything like honest, the stock, in a given time, would have matured, and, when matured, would have been surrendered to the company, and defendant's bond and mortgage delivered to him as canceled. At least, this is the theory, and it is said by experts that it will work out. Of course, as every one knows, and as many admit, it does not generally work out. A few years ago this craze broke out, and took hold of the ignorant people from one end of the country to the other. And many apparently (and otherwise) intelligent people were made to believe that both the stockholder and the borrower could easily get rich; that immense profits could be made by taking money from the left-hand pocket and putting it in the right-hand pocket. And such fallacies were, no doubt, believed by defendant herein. But that it was a fallacy does not, of itself, entitle defendant to relief. But I find that the spirit of the agreement was that defendant's premium was to be met by the growth of his interest in his stock. The corporation being insolvent, his stock will never mature. Whatever his stock is worth, if anything, will be paid to him.

But this is no reason why he should not be credited with his premiums on his loan. I think the recent case by the circuit court of appeals for the Fourth circuit, of Coltrane v. Blake, 113 Fed. 785, is sound, and, as much as any other case, leads me to the conclusion I adopt.

But I cannot agree, as the special master finds, that defendant should be allowed interest on the premiums thus paid. My conclusions are that the defendant should be charged with the following sums: (1) The amount of his bond; (2) the interest thereon for the full time. But not with any fines. He will be credited: (1) With all interest by him paid; (2) the premiums by him paid. These payments will be applied according to the principle of partial payments. An attorney's fee will be allowed, according to the contract. Complainant brings this action as though a trustee. Dodge v. Tulleys, 144 U. S. 451-456, 12 Sup. Ct. 728, 36 L. Ed. 501.

After the insolvency of the corporation, and the appointment of the receiver by the Illinois court, the defendant herein, as plaintiff, brought an action in a Nebraska state court against the corporation and the receiver, resulting in a decree canceling the mortgage now in suit. Notice of the suit was by publication, and neither the corporation nor the receiver had any knowledge of the suit, and neither appeared. And there was no permission given to make the receiver a party. That decree was not an adjudication, and is not binding on this court in this action.

There will be a decree for the plaintiff on the basis of this opinion.