## MATHIS et al. v. HEMINGWAY.

Circuit Court of Appeals, Eighth Circuit. March 6, 1928.

No. 7713.

**1. Appeal and error** ⟨⟩327(7)—Mortgagor's bankruptcy trustee held not necessary party to appeal from decree distributing proceeds of sale on foreclosure, which were less than amount due mortgagees.

Trustee in bankruptcy of mortgagor *held* not necessary party to appeal from decree distributing proceeds of sale under decree of foreclosure, where proceeds were less than amount due under trust deeds, so that such trustee in bankruptcy was not entitled to receive any of them.

**2. Courts** ⟨⟩335(1)—Jurisdiction and remedies in equity in federal courts are not limited by state law.

Jurisdiction and remedies in equity in United States courts are prescribed by Constitution and law of United States, and are not limited by state statutes or decisions.

**3. Courts** ⟨⟩311—Nonresident successor to resident trustee under deed of trust held entitled to bring foreclosure suit in federal court on ground of diverse citizenship (equity rule 37).

Nonresident successor to trustee under deed of trust may bring foreclosure suit in federal court on ground of diversity of citizenship, where his appointment was not fraudulent or collusive, notwithstanding original trustee and beneficiary in trust deed were residents of same state as defendants, since, under equity rule 37, trustee of express trust may sue in his own name without joining party for whose benefit action is brought.

**4. Mortgages** ⟨⟩342—Appointment of new trustee under trust deed, pursuant to provision for such appointment in case of first trustee's resignation or refusal to act, held exercise of valid power.

Where trust deed contained provision for appointment by beneficiary of successor to trustee, on his resignation or refusal to act, appointment of new trustee pursuant thereto was exercise of valid power.

**5. Reformation of instruments** ⟨⟩45(2)—Clear, convincing, and satisfactory evidence of mutual mistake is required to authorize reformation of written contract.

Reformation of written contract will not be awarded, unless proof of alleged mutual mistake is clear, convincing, and satisfactory.

**6. Reformation of instruments** ⟨⟩45(8)—Evidence held to support decree reforming trust deed to include tract omitted by mutual mistake.

Evidence *held* sufficient to support decree awarding reformation of trust deed to include certain 40-acre tract, where it was shown that, at time trust deed was executed, mortgagors and mortgagee intended that such land should be included, and that omission was through mutual mistake.

**7. Reformation of instruments** ⟨⟩19(1), 28—Mutual mistake will authorize reformation of conveyance of land as against grantors or subsequent grantees with notice.

Where mutual mistake is made in execution of conveyance of land, reformation of conveyance may be had as against grantors, and also against subsequent grantees, who took their conveyances with notice of mistake.

**8. Vendor and purchaser** ⟨⟩230(1)—Trust deed held notice of recitals contained therein, both as to grantee and one taking quitclaim deed after trust deed was recorded.

Deed of trust *held* to be notice to grantee, and to one who took quitclaim deed after such trust deed had been recorded, of recitals contained in it.

**9. Vendor and purchaser** ⟨⟩230(3)—Recital in trust deed of prior incumbrance held sufficient to put grantees on inquiry as to what land parties intended to be covered by prior incumbrance.

Notice in trust deed of prior incumbrance *held* sufficient to put grantees on inquiry as to what intention of parties as to land to be included in prior incumbrance was, since knowl-

edge of facts and circumstances which would put person of ordinary prudence and intelligence on inquiry is, in eyes of law, equivalent to knowledge of facts that reasonably diligent inquiry would disclose.

**10. Estoppel  ⬤⟹29(2)—Grantee, accepting trust deed reciting that it was subject to prior incumbrance, is estopped to deny existence and validity of prior lien.**

Grantee in third trust deed, who accepted deed containing recital that it was subject to prior incumbrance, *held* estopped from denying existence and validity of prior lien.

**11. Courts  ⬤⟹367(4)—Federal courts should follow state decisions, stating rule of property as to effect and construction of instruments intended to convey land.**

Decisions of state Supreme Court, stating rule of property as to effect and construction of instruments intended to convey land, should be followed by Circuit Court of Appeals.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by W. L. Hemingway, trustee, against Ross Mathis and others. From the decree, defendants appeal. Affirmed.

This appeal was taken from a decree ordering a distribution of the proceeds of a sale made under a decree of foreclosure of trust deeds on real estate. By consent of the parties the decree had fixed the validity of four deeds of trust as liens upon the lands, and had ordered a sale of the lands in satisfaction of the decree. The decree provided for the payment into the registry of the court of the sum to be received as the purchase price of a tract of 40 acres of the lands, and as to this sum the decree stated that it reserved for future consideration the questions of the jurisdiction of the court, as asserted in three answers to the complainant's bill, and of the priority of the several deeds of trust. The sum received as the purchase price of this 40 acres of land was $10,000. The decree of foreclosure was entered July 13, 1926. A trial was had on October 23, 1926 upon the questions reserved in the prior decree and the final decree from which these appeals were taken was entered on October 23, 1926.

On and before February 2, 1920, R. B. Campbell, John L. Turner, and D. J. Williams owned a tract of farm land of about 5,200 acres and located in Prairie and Woodruff counties, Arkansas. It was known as the Dixie Plantation. The three owners acted as a partnership in managing this plantation for agricultural purposes, but Mr. Turner owned a one-half interest in it, and Mr. Campbell and Mr. Williams each owned a one-fourth interest. The partnership owed its creditors a large sum of money.

On February 2, 1920, the three partners and their wives executed a deed of trust in favor of Moorhead Wright, as trustee for the Union & Mercantile Trust Company of Little Rock, Ark., to secure an indebtedness to the trust company of $125,000. This trust deed covers all of the lands, except the 40 acres mentioned, 40 acres adjoining it, and a few other small tracts. The 40 acres now in controversy was known as the "headquarters 40" and was described as the southeast quarter of the northeast quarter of section 12, township 5 north, of range 4 west. The adjoining 40 acres, which was omitted, was the northeast quarter of the southeast quarter of that section. These lands were intentionally omitted from the trust deed at the request of the partnership, because they planned to plat the 80 acres as a town site and to sell portions of it from time to time, and because contracts had been made on behalf of the partnership to sell the other small tracts. These contracts of sale were afterwards released to the partners.

In the autumn or early winter of 1921 the partnership debts had increased. It was owing $25,750 under this trust deed for overdue interest and for taxes and assessments levied on the lands which the cestui que trust had paid. It also owed about $120,000 to various banks and other creditors for money loaned or for supplies furnished to the plantation. On November 1, 1921, the partners and their wives executed the second trust deed to Moorhead Wright, as trustee for the Union & Mercantile Trust Company, to secure the debt of $25,750. This deed purported to convey, as a first and prior lien, the small tracts which had been omitted from the first trust deed and also the east half of the southeast quarter of section 12, township 5 north, of range 4 west, and to convey, subject to the first trust deed, the lands mentioned in that deed, and it again included the southeast quarter of the southeast quarter of section 12 (which had been conveyed in the above description of the east half of the southeast quarter), but did not include the "headquarters 40."

On January 12, 1922, the partners and their wives executed a third deed of trust to Ross Mathis, as trustee for a number of creditors, in consideration of an extension of a pre-existing indebtedness of about $128,000. This deed properly described all of the lands of the partnership, including the "headquarters 40," but it contained the following clause,

immediately following the habendum clause: "It is understood that first parties are intending to include all the property owned by Dixie Plantation, aggregating to fifty-two hundred (5,200) acres, subject, however, to a prior incumbrance to the Union & Mercantile Trust Company, of Little Rock, Arkansas, in the aggregate sum of one hundred fifty thousand dollars ($150,000)." All of these trust deeds were properly recorded very soon after execution.

After the making of these three trust deeds Mr. Campbell died, and his interest in the plantation was afterwards conveyed to Mr. Turner and Mr. Williams. On November 7, 1924, they quitclaimed one-fourth interest to Gordon Armitage for services rendered by him in 1921, 1922, 1923, and 1924, in checking the taxes due on the plantation, and for some services rendered about the plantation. After the deeds of trust were executed, Mr. Turner became a bankrupt, and Dale Welsh was appointed as his trustee in bankruptcy.

Moorhead Wright, named as the trustee in the first and second deeds of trust, was a citizen of Arkansas. On March 20, 1926, he resigned as trustee and refused to act under the trust deeds. The second trust deed contained a provision that, if the trustee should from any cause be incapable of or unwilling to act in the execution of the trust, or should resign or refuse to act, the cestui que trust, or the legal holder or holders of the indebtedness secured by the trust deed, might appoint a trustee to execute the trust and exercise the powers conferred on the trustee with like effect. There was a similar provision in the first deed of trust. Following the resignation of Mr. Wright as trustee, the trust company, the beneficiary in the first and second trust deeds, appointed the complainant, W. L. Hemingway, a citizen of Missouri, as trustee in the trust deeds, in substitution for and as successor to Moorhead Wright, and he began this suit, alleging diversity of citizenship between himself and the defendants.

The complainant alleged the resignation of Moorhead Wright as trustee, the appointment of himself as his successor, the execution of the first and second deeds of trust, the indebtedness secured thereby, and default in the payments agreed to be made by the grantors. He then alleged that a mutual mistake was made in each of these deeds, because it was the intention of the parties to these deeds that each should include in the property conveyed the southeast quarter of the northeast quarter of section 12 (the

24 F.(2d)—60½

"headquarters 40"). It was alleged that the defendants had notice of the mistake at the time they acquired their respective interests in the land, and the prayer was for reformation of the trust deeds, a finding of priority of liens, and for a decree of foreclosure.

As there was no proof of mistake in the omission of lands from the first trust deed, it is unnecessary to consider further the right to a reformation of that deed. The complainant dismissed his bill as to some of the defendants originally named. The answers and counterclaims of the trustee and of a beneficiary under the third trust deed denied that any mistake had been made in the omission of lands in the second trust deed, asserted a prior lien on the 40 acres in controversy, and alleged that Moorhead Wright and the Union Trust Company (successor of the Union & Mercantile Trust Company) were indispensable parties plaintiff in the complainant's suit, and were citizens of the same state as the defendants, and that the complainant had been fraudulently substituted as trustee to confer jurisdiction upon the United States court.

Dale Welsh, as the trustee in bankruptcy of Mr. Turner, filed a motion to dismiss the complainant's bill, because it appeared from the bill that Moorhead Wright, the original trustee named in the first and second trust deeds, was an indispensable party and was a citizen of Arkansas. The answer of Gordon Armitage made the same claim as was made in this motion of Dale Welsh, and also asserted that the Union Trust Company was an indispensable party plaintiff, that the complainant had been fraudulently substituted as trustee to confer jurisdiction in the United States court, denied that any mistake had been made entitling the complainant to reformation as prayed, and alleged that he was the owner of an undivided one-fourth interest of the 40 acres in controversy by virtue of a quitclaim deed signed by Mr. Williams and his wife and by Mr. Turner and his wife, and that he had taken the deed without notice of any claim by the Union Trust Company or by its trustee to the 40 acres in controversy.

Ross Mathis, of Cotton Plant, Ark., and W. G. Dinning, of Helena, Ark., for appellants.

H. M. Trieber and P. A. Lasley, both of Little Rock, Ark., for appellee.

Before KENYON and BOOTH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge (after stating the facts as above). [1] The appellee asks

to have the appeal dismissed because Dale Welsh, as trustee in bankruptcy of John L. Turner, was a party defendant, and alleges that he has a substantial interest in the decree appealed from, and has not been joined in the appellate proceedings, nor has there been a summons and severance as to him. The only pleading presented by Dale Welsh as such trustee was a motion to dismiss the complaint, because Moorhead Wright, as the original trustee in the first and second trust deeds, was not made a party to the suit. At the time of the first decree, and until the sale of this 40 acres occurred, Mr. Welsh, as trustee in bankruptcy of one of the mortgagors who signed the first, second, and third trust deeds, had a limited and contingent interest in this 40 acres, a right of redemption from the incumbrances upon it, or to receive any sum for which it might be sold above the amount of the incumbrances. The effect of the sale for a sum very much less than the amount due under either the second or third trust deeds was to extinguish any further interest of Mr. Welsh as such trustee in bankruptcy, in the issues which the court had reserved for consideration. The proceeds of the sale would belong in their entirety to the holder of either the second or third trust deeds, and in no event would Mr. Welsh, as such trustee in bankruptcy be entitled to receive any of the proceeds. He therefore had no such interest as made him a necessary party to an appeal from a decree distributing the proceeds of the sale. Galveston H. & N. Ry. Co. v. House (C. C. A.) 102 F. 112, 114.

[2-4] Without stopping to consider the effect of the decree of July 13, 1926, as a final judgment entered by consent of the parties, in a suit where there was proper diversity of citizenship, upon the rights of the appellants to have interposed objections at the time of the distribution of the proceeds of the sale of the 40 acres, on the grounds that the plaintiff had no capacity to sue, that the trustee named in that deed was an indispensable party plaintiff and that the beneficiary in the first trust deed was an indispensable party plaintiff, there is no merit otherwise in the contentions. Appellants have cited decisions of the Supreme Court of Arkansas in support of these claims, but the jurisdiction and remedies in equity in the United States courts are prescribed by the Constitution and laws of the United States and are not limited by state statutes or decisions. Boyle v. Zacharie, 6 Pet. 648, 658, 8 L. Ed. 532; Dodge v. Tulleys, 144 U. S. 451, 457, 12 S. Ct. 728, 36 L. Ed.

501; Burrill v. Locomobile Co., 258 U. S. 34, 38, 42 S. Ct. 256, 66 L. Ed. 450; 1 Bates, Fed. Eq. Proc. § 8.

By the decrees of the first and second trust deeds the legal title was conveyed to the trustee for the benefit of the Union & Mercantile Trust Company. By equity rule No. 37, a trustee of an express trust, or a party in whose name a contract has been made for the benefit of another, may sue in his own name without joining with him the party for whose benefit the action is brought. See, also, Dodge v. Tulleys, 144 U. S. 451, 455, 12 S. Ct. 728, 36 L. Ed. 501. There was no evidence to show that the resignation of Moorhead Wright, the original trustee, and the appointment of the complainant as his successor, was fraudulent or collusive. The first and second trust deeds contained provisions for the appointment of a successor to the trustee, in case of his resignation or refusal to act. This power of appointment was conferred upon the beneficiary in those deeds by the grant from the mortgagors, and no claim is made that the appointment was not made in pursuance of the grant. The appointment of the new trustee was the exercise of a valid power. 1 Perry on Trusts, §§ 287, 288; 3 Jones on Mortgages, § 1774; Shaw v. Paine, 12 Allen (Mass.) 293, 296; 39 Cyc. 271.

[5] Appellants assert that the decree awarding reformation of the second trust deed, as prayed in the bill, so as to include the "headquarters 40" acres was not supported by sufficient evidence. The rule is well established that the reformation of a written contract will not be warded, unless the proof of an alleged mutual mistake is clear, convincing, and satisfactory. Philippine Sugar, etc., Co. v. Phil. Islands, 247 U. S. 385, 391, 38 S. Ct. 513, 62 L. Ed. 1177. Bailey v. Lisle Mfg. Co. (C. C. A.) 238 F. 257, 266; Southern Surety Co. v. United States Cast Iron Pipe & F. Co. (C. C. A.) 13 F. (2d) 833, 837.

[6] On behalf of the complainant there was direct testimony by three persons who participated in the arrangements for and execution of the trust deed that it was intended to include this 40 acres. The vice president of the Union Trust Company testified that this 40 acres and an adjoining 40 acres was omitted from the first trust deed at the request of the grantors, because they wished to subdivide and sell this land as a town site; but he says he asked Mr. Williams and Mr. Turner, who conducted the negotiations relating to the second trust deed, to include in it the entire 80 acres and also the other tracts omitted

from the first trust deed, and that they agreed it should all be included. The vice president then delegated the preparation of the trust deed to Mr. Buttner, the mortgage loan officer of the trust company, with instructions that these lands were to be included. Mr. Turner, one of the grantors, testified that the grantors constituted a partnership, and when they found that, because of a crop failure, they would be unable to pay the interest and taxes due they applied to the Union Trust Company for an extension of time. He said that the trust company requested, and that Mr. Williams and he agreed, that they would include the 80 acres and the other lands in the second trust deed. Mr. Buttner testified that Mr. Williams and Mr. Turner agreed to include the 80 acres and all other lands that had been omitted from the first trust deed.

In preparing the description of the lands to be included in the second trust deed, a map or plat was used, and Mr. Williams or Mr. Turner called off to Mr. Buttner the descriptions of the lands to be included, and Mr. Williams checked off the lands on the map. Mr. Buttner then had the trust deed prepared in his office by his secretary. The trust deed appears to have been sent, after its preparation, to the grantors at the Dixie Plantation, to be executed. Mr. Turner also testified that Mr. Campbell was not present at the time of the negotiations, but that Mr. Williams and he had authority to do whatever they desired to have done. Mr. Williams at that time managed the plantation, Mr. Turner was at the plantation every two weeks, but Mr. Campbell had very little to do with it. The omission of the 40 acres was discovered by the trust company in 1925, after a survey had been made of the plantation, and Mr. Williams, upon learning of the omission, wrote several letters to the trust company, and in these letters, and also in conversations with officers of the trust company, stated that it was the intention to include the 40 acres. Mr. Campbell was dead at the time of the trial. His widow was a party to the suit, as his executrix and as his widow, but entered no appearance, and a pro confesso decree was entered against her. As circumstantial evidence bearing on the intention of the parties, it appears that the list of the lands conveyed as written in the second trust deed contains a duplication of the 40 acres immediately south of the "headquarters 40," first conveying it as a "first and prior lien," and again conveying it subject to the first trust deed. Another circumstance bearing upon the intention of the grantors is found in the third trust deed, in the recital:

"It is understood that first parties are intending to include all the property owned by Dixie Plantation, aggregating to fifty-two hundred (5,200) acres, subject, however, to a prior incumbrance to the Union & Mercantile Trust Company of Little Rock, Arkansas, in the aggregate sum of one hundred and fifty thousand dollars ($150,000)."

There was no direct testimony that it was not the intention of the parties that the 40 acres should be included. As indirect testimony it was shown that some time in the fall or early winter of 1921, there was a meeting of creditors of the partnership at the Interstate National Bank of Helena, Ark. The partners were all present. The creditors were pressing for additional security for their claims. One of the creditors testified that the partners said that they owned a 40 acres, a town site, on which there was no incumbrance, and they offered to give a mortgage on that 40 acres and a second mortgage on the rest of the plantation lands, but desired an extension of time for three years and advancements of supplies for the ensuing year. An agreement was written out, but it was not produced or accounted for at the trial. Others present at this creditors' meeting are more indefinite in their testimony as to what was said, but in substance they stated that mention was made of some land or property that was clear, and that they understood they were to get a first mortgage upon this property.

The real question involved is the intention of the partners at the time they executed the second trust deed. Even if they had expressed an intention at the creditors' meeting, and prior to the execution of the second trust deed, to give a first mortgage to the creditors on the "headquarters 40," that intention was not expressed in the deed of trust which was given. Whether or not the partners made promises that they did not intend to perform, when creditors were pressing them for settlement of their claims, and whether or not they subsequently changed their intentions, the two partners who negotiated with the trust company about the execution of the second trust deed seem to have clearly stated or admitted their intention to include the "headquarters 40" in that trust deed at the time it was executed. The duplication of description of one 40 acres in that deed is some evidence that there was a mistake in the description of the land intended to be conveyed. The intention of the parties is also quite clearly manifested

by the third deed of trust given to the creditors. Its execution and delivery were delayed until in January, 1922, over seven weeks after the execution of the second deed of trust. The third trust deed which was given was accepted by the creditors. The recital which it contained stated that there was a "prior incumbrance" to the Union & Mercantile Trust Company of $150,000. This statement was inconsistent with an intention to convey the "headquarters 40" free from any prior incumbrance, and was a notification to the grantee that the grantors had given, or at least had intended to have given, a prior lien to the Union & Mercantile Trust Company. The sum of $150,000 expressed as the amount of this incumbrance was approximately the principal secured by the first and second deeds of trust.

[7] On this evidence it seems clear, as it did to the trial judge who heard the testimony, that, whatever had been the prior intentions of the grantors, the actual intent of the grantors and of the beneficiary of the second deed of trust, at the time it was executed and delivered, was that the second deed of trust should be a first lien upon the "headquarters 40" and upon the other lands omitted from the first trust deed, and that the omission of the "headquarters 40" from the land described was the result of a mutual mistake of the parties. The complainant was entitled to a decree of reformation as prayed as against the grantors. Where a mutual mistake is made in the execution of a conveyance of land, a reformation of the conveyance may be had as against the grantors, and also as against subsequent grantees who took their conveyances with notice of the mistake. 1 Jones on Mortgages (7th Ed.) § 99.

[8, 9] The third trust deed was notice to the grantee, and to Armitage, who took his quitclaim deed after that trust deed had been recorded, of the recitals contained in it. The recital stated that the property conveyed was subject to a prior incumbrance to the Union & Mercantile Trust Company in the aggregate sum of $150,000. "Knowledge of facts and circumstances which would put a person of ordinary prudence and intelligence on inquiry is, in the eyes of the law, equivalent to a knowledge of all the facts which a reasonably diligent inquiry would disclose." Rader v. Star Mill & Elevator Co. (C. C. A.) 258 F. 599, 604; Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807; Weniger v. Success Mining Co. (C. C. A.) 227 F. 548, 557; 2 Pom. Eq. Jur. § 597; 41 Corp. Jur. 555, 557.

The prior incumbrance did not in fact include the "headquarters 40" acres, but the recital of a prior incumbrance to the trust company and of the amount was sufficient to put the grantees in the third trust deed and in the quitclaim deed upon inquiry, and a reasonably diligent inquiry would have disclosed that it was the intention of the parties to the second trust deed that it should have included the "headquarters 40" acres. Reeves v. Vinacke, 1 McCrary, 213, Fed. Cas. No. 11,663, was an action to reform the description of land stated in a mortgage. The mortgage was given by C. B. Jordan on $1\frac{1}{2}$ acres in the southeast quarter of a section of land, when it had been the intention to give the mortgage upon a similar parcel in the southwest quarter of the section. Resistance was made to the reformation by Vinacke, a purchaser of the land in the southwest quarter, but in the deed of conveyance to him it had been recited that "the above premises are the same that C. B. Jordan mortgaged to Robert Morrison to secure his note to Rohrer, Morrison & Reeves, which mortgage said Vinacke agrees to pay." In granting reformation the court said:

"The recital in the deed from Jordan to Vinacke is evidence against him; and it being stated that a mortgage had been given, and Vinacke agreed to pay it, such recital is intended as the agreement of the parties and estops them. Vinacke has thus admitted conclusively the lien of the mortgage and assumed a personal liability. It cannot be doubted that the doctrine of privity prevails, and all persons claiming title to the property under and through Vinacke & Kennedy are privies in estate, and can be in no better situation than they are from whom the title is obtained. Jackson v. Carver, 4 Pet. (29 U. S.) 83 [7 L. Ed. 761]; Bank of U. S. v. Hatch, 6 Pet. (31 U. S.) 250 [8 L. Ed. 387]; 9 Wend. 209; Story, Eq. §§ 152, 165. The defendants, Geo. F. and Horace A. Jewett, on investigation of the title, would necessarily discover the recital that the mortgage was intended to cover the land described in the deed, and at least were required to make inquiry of Jordan or Vinacke or Kennedy. [Nute v. Nute] 41 N. H. 560."

In the case of Herring v. Fitts, 43 Fla. 54, 30 So. 804, 99 Am. St. Rep. 108, reformation was decreed of a mortgage by inserting a description of $2\frac{1}{2}$ acres of land, which had been omitted, against the objections of the holder of a later mortgage covering this $2\frac{1}{2}$ acres, because of a recital in the later mort-

gage that it was "a second mortgage on the above-described pieces of land and subject to a mortgage thereon given to W. C. Herring bearing date May 26, 1890." The court said:

"The bank accepted this mortgage and is bound by its recitals and conditions. In terms it contracted with the mortgagors for a second mortgage to that of Herring on the land described and the reformation of the first mortgage does not alter the contractual relation voluntarily assumed by the second one. It does not appear that the representatives of the bank ever made any investigation or inquiry in the right direction to ascertain whether or not Herring had any mortgage claim on the land, and its mortgage clearly imparted information of this fact. It must, therefore, be accepted that the bank received its mortgage under the agreement and belief that Herring was entitled to a prior lien on the land, and, as he was in fact so entitled, it would be contrary to equity to deprive him of his rights. It was held in Council Bluffs Lodge v. Billups, 67 Iowa, 674, 25 N. W. Rep. 846, that where a mortgagee has notice of a first, but unrecorded, mortgage, which is recited in his mortgage as being a first lien, he cannot claim that his mortgage takes precedence of a new mortgage, executed after his mortgage, to correct a mistake in the description of the property in the first mortgage. This view is also sustained in Gale's Executors v. Morris, 29 N. J. Eq. 222; Id., 30 N. J. Eq. 285."

Reformation was granted under substantially similar conditions and for substantially the same reasons in Warburton v. Lauman, 2 G. Greene (Iowa) 420, and in Carter v. Leonard, 65 Neb. 670, 91 N. W. 574, and in Sherwin-Williams Co. v. Leslie, 168 Ark. 1049, 272 S. W. 641. See 44 A. L. R. (note) page 102.

[10, 11] The grantee in the third trust deed, not only was affected with this notice, but he accepted the deed containing the recital that it was subject to the prior incumbrance. Under the decisions of the Supreme Court of Arkansas, this estopped him from denying the existence and validity of the prior lien. Sherwin-Williams Co. v. Leslie, 168 Ark. 1049, 272 S. W. 641; Reidmiller v. Comes, 158 Ark. 21, 249 S. W. 354. These decisions state a rule of property as to the effect and construction of instruments intended to convey land, and should be followed by this court. Brine v. Insurance Co., 96 U. S. 627, 635, 636, 24 L. Ed. 858.

The decree of the trial court will be affirmed.