PINE MOUNTAIN IRON & COAL CO. et al. v. BAILEY et al.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1899.)

No. 1,103.

1. AGENT — REPRESENTING ADVERSE INTERESTS — NOTICE TO AS AFFECTING PRINCIPAL.
   The fact that an agent also acts as agent for the party adversely interested in the transaction does not prevent his principal from being bound by notice to or knowledge acquired by such agent where the principal consents to such adverse agency.

2. SAME—ACQUIRING ADVERSE INTERESTS—NOTICE TO AS AFFECTING PRINCIPAL.
   Where one negotiating the sale of a mortgage for a trust company is also the agent of the proposed purchaser for the purpose of investing his money and examining his titles, and pending the negotiations the agent becomes the owner of the mortgage, without the knowledge of the principal, the agency ceases, so that on the subsequent purchase of the mortgage by the principal he is not bound by notice to or knowledge of the agent as to defects in the mortgage or its title, and is a bona fide purchaser for value.

Appeal from the Circuit Court of the United States for the District of Minnesota.

This is an appeal from a decree which dismissed a bill to remove an alleged cloud from the title of the appellants to certain real estate in the state of Minnesota. The alleged cloud consisted of a perfect record title to the property in the appellee Charles Irving Bailey which had arisen in this way: On August 29, 1892, the appellee John D. Blake, who was the owner of the property, made a mortgage upon it to the Metropolitan Trust Company, a corporation, to secure the payment of his promissory note to it for $17,290. This mortgage was recorded on October 27, 1892, and according to the record constituted a first lien upon the property in controversy. P. M. Woodman had been for many years, and was, a general agent of the appellee Charles M. Bailey to procure first mortgages for him, and to examine the title, or to cause the title of the property covered by such mortgages to be examined, on his behalf; and at the same time he was the trust or trading officer of the Metropolitan

Trust Company. On account of certain agreements which Blake had made with the appellants, the Pine Mountain Iron & Coal Company and the Germania Safety-Vault & Trust Company, they claim—and for the purpose of the decision of this case their claim will be conceded to be well founded without investigation—that this mortgage was void as against them. Their agreements, however, were not of record, and the record disclosed no notice of their claim. Upon the record their title appeared to be subject to the mortgage, and to be founded upon a deed to Blake, which was not recorded until after the record of the mortgage had been made. Before the trust company paid to Blake the money which it loaned to him on this mortgage, however, the appellants notified Woodman, as the trust officer of that company, of their claim that the mortgage was void. In this state of the facts, Woodman wrote Charles M. Bailey on January 6, 1893, and asked him, if he would like "an 'A 1' 7 per cent. mortgage, $17,290, on at least $60,000 worth of property; mortgage made by a good man, too. We have taken it in, and I think I can get it for you if you wish." On January 9, 1893, Bailey replied that he was short of funds, but that if it was a good mortgage he thought he could send a check for it some time that month. He inquired about the property it covered, whether Woodman could get 7½ per cent. or 8 per cent. interest, and when the note was payable. On January 13, 1893, Woodman wrote to Bailey: "This $17,290 mortgage of which I wrote you is on good city property, and is already made. Our company took it in, and it is exceptionally good, we think, in the matter of security; and I know the maker, and have known him for many years, and believe him to be perfectly good. The mortgage is dated August 29, 1892, and runs for three years at 7 per cent. We could not make it better than 7 per cent., as we get a very small commission." On January 17, 1893, Bailey wrote Woodman that he did not care for the mortgage, but that, if they would allow him one month's interest, and could make anything by sending it to him, he would send a check some time that month. On January 20, 1893, Woodman replied that he could not allow him the January interest, but would give him half of their commission of $122.90, and asked him to send a check for the mortgage on or before February 1, 1893. Some time in January, 1893, while this negotiation was in progress, and before the sale to Bailey was made, or its terms agreed upon, Woodman had bought the mortgage and note of the trust company, in order to raise money for it. The trust company had assigned them to him. He had borrowed of a bank in Minneapolis, upon his individual note, the necessary money to pay for them, and had pledged them to the bank as collateral security for his note. In other words, Woodman had become the owner of the note and mortgage, and the trust company had parted with its title to and interest in them, before Woodman sold them to Bailey. In this condition of the title, Bailey sent his check to Woodman for the note and mortgage on January 27, 1893, Woodman assigned them back to the trust company, that company then assigned them directly to Bailey, and this latter assignment was recorded. The previous assignment to Woodman was not recorded, and Woodman never notified Bailey, and Bailey did not learn until years afterwards, that Woodman had ever owned the note and mortgage, or that the appellants had ever claimed that it was not valid. In 1894 he foreclosed the mortgage, and in November, 1895, he conveyed the property which it covered to his son, Charles Irving Bailey, by a quitclaim deed, which recites a consideration of $25,000. The record of this case discloses no evidence that the grantee in that deed was aware of any defect in the title, or of the claim of the appellants, before he paid the consideration for it; and there was no notice of any such claim upon the record of the title. In this state of the facts the court below dismissed the bill on the ground that the Baileys were bona fide purchasers for value, without notice of any defect in the mortgage or title.

A. E. Richards and Arthur M. Keith (John B. Baskin, A. G. Ronald, R. G. Evans, Charles T. Thompson, and Edwin K. Fairchild, on the brief), for appellants.

John Van Derlip (George P. Wilson, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

This case presents many interesting questions, but the answer to one of them necessarily determines its decision. It is admitted that the decree below should be affirmed unless the facts which we have recited charged Charles M. Bailey, under the law, with notice of the claim of the appellants that the mortgage was invalid on or before January 27, 1893, when he purchased and paid for it. The proof is conclusive that he had no actual notice of this claim, and that the record title of the property mortgaged gave him no constructive notice of it; but the counsel for the appellants insist that the notice which Woodman had received while acting as an officer of the trust company was, under the law, notice to Bailey, because Woodman was Bailey's general agent to invest his money, and to examine his titles, and notice to the agent is notice to the principal. Notice to and the knowledge of the agent or attorney acquired in prior transactions, and present in his mind while he is exercising the powers and discharging the duties of his agency, are notice to and the knowledge of his principal. Railway Co. v. Belliwith, 28 C. C. A. 358, 83 Fed. 437, 440. For the purpose of this discussion we concede, without considering the issue, that knowledge of the appellants' claim had been acquired by Woodman in October, 1892, and was present in his mind when he sold the note and mortgage to Bailey. He entered upon the negotiation of that sale as the trust officer of the Metropolitan Trust Company, duly authorized to sell the mortgage for it, and also as the agent of Bailey to purchase mortgages, and to examine titles for him. Bailey, however, knew that he was an officer of the trust company, and that he was acting for that company in his attempt to sell this mortgage to him, and we concede, for the purposes of this case, that his consent that Woodman should act as agent for both these parties would estop him from escaping on that ground from the general rule that notice to the agent is notice to the principal. A principal who knows that his agent is also acting as agent for the party adversely interested in a transaction with him, and yet consents that he may act as his agent, is estopped from denying the notice and knowledge which the agent has during the negotiation. Astor v. Wells, 4 Wheat. 466; Fitzsimmons v. Express Co., 40 Ga. 330, 336; Alexander v. University, 57 Ind. 466, 476; Leekins v. Nordyke & Marmon Co., 66 Iowa, 471, 475, 24 N. W. 1; Mining Co. v. Senter, 26 Mich. 73, 77. But before the negotiation was closed, before Bailey bought or agreed to buy the mortgage, Woodman had become the sole owner of them, the trust company had parted with its title to them, and Bailey was kept in ignorance of this fact. Woodman had borrowed the money of the bank on his individual note to purchase the mortgage, and had paid this money over to the trust company. The note and mortgage had been assigned to him, and he had pledged them to the bank as collateral security for the payment of his note. It is doubtless true that the motive which induced him to take this action was to raise money for the company. But his purpose is not material here. The facts remain that before Bailey bought or agreed to buy the note and mortgage Woodman had be-

come their owner; and when the agreement of sale was finally made, and when it was performed, he was the vendor, and Bailey was the purchaser, and Bailey was not informed of these facts. Now, the interest of vendor and purchaser are diametrically opposed. To the former the highest, and to the latter the lowest, price is the greatest good. To permit the seller to act as the agent of the buyer inaugurates so dangerous a conflict between self-interest and duty that the law has wisely removed the temptation by forbidding the relation. No man can be a vendor or the agent of a vendor and the purchaser or the agent of the purchaser at the same time, unless he first obtains the consent of the party with whom he deals, after a complete disclosure of all the facts which condition his relation. The law absolutely prohibits the vendor from being at the same time the agent of a purchaser, unless the latter consents to the relation after he knows that his agent is the seller. Warren v. Burt, 7 C. C. A. 105, 107, 58 Fed. 101, 103, and 12 U. S. App. 591, 595; McKinley v. Williams, 20 C. C. A. 312, 74 Fed. 94, and 36 U. S. App. 749, 752. Every general agency is necessarily limited by this rule of law, and must be construed in its light. As long as the agent is conducting negotiations for his principal with third parties, he may act on his behalf; but the moment he undertakes, without the knowledge of his principal, to conduct them with himself, his agency ceases, and the powers and liabilities of that relation no longer exist. Voltz v. Blackmar, 64 N. Y. 440, 446.

In consonance with this principle of the law of agency, the rule that notice to the agent is notice to the principal has an exception as well established as the rule itself. It is that when the agent acts for himself, in his own interest, and adversely to his principal, in a given negotiation or transaction, neither notice to nor the knowledge of the agent can be lawfully imputed to the principal. Surety Co. v. Pauly, 170 U. S. 133, 156, 18 Sup. Ct. 552; Frenkel v. Hudson, 82 Ala. 158, 2 South. 758; Waite v. City of Santa Cruz, 89 Fed. 619, 630; Barnes v. Gaslight Co., 27 N. J. Eq. 33, 37; Winchester v. Railroad Co., 4 Md. 231, 241; Davis Improved Wrought Iron Wagon Wheel Co. v. Davis Wrought Iron Wagon Co., 20 Fed. 699, 702; Thomson-Houston Electric Co. v. Capital Electric Co., 56 Fed. 849, 853; Bank v. Cunningham, 24 Pick. 270, 276; Mechem, Ag. § 723. The reason of the general rule is that it is the duty of the agent to communicate to his principal the facts relative to any transaction in which he acts on his behalf, and that the law presumes that he has discharged his duty. But when the nominal agent commences to act in his own interest, and adversely to his principal, the presumption no longer obtains that he will communicate to him facts which might prevent the consummation of the negotiation which he is conducting on his own behalf, and the counter presumption that he will conceal them arises. As the reason for the rule no longer exists, the rule ceases to apply, and the exception prevails. The case at bar falls far within the exception. The time when notice of the appellants' claim that the mortgage was void became material, the time when that notice would naturally have been communicated to Bailey, was when it became the duty of Woodman to examine and certify the title

for him. In the ordinary course of business that time did not arrive until Bailey agreed to take the mortgage, for it is useless and unusual to examine or certify the title for a purchaser until he has agreed to purchase if it is found to be good. Now, Bailey did not accept the terms of sale which Woodman offered him until January 27, 1893, and long before that time Woodman had become the owner of the note and mortgage, the vendor, and the party interested adversely to his former principal, in his negotiations for their sale; and he was conducting those negotiations in his own interest, and not in the interest of Bailey. He had, therefore, ceased to be Bailey's agent, and his notice and knowledge of the appellants' claim cannot be lawfully imputed to his former principal. The presumption, which arises from his adverse interest, that he did not communicate his knowledge, is shown by the record to be in accordance with the fact. He never informed Bailey of the appellants' claim that the mortgage was void. He never notified him that he was the real owner and vendor of the note and mortgage which he caused the trust company to assign to him. All these material facts he concealed from his former principal, just as the law presumes from his adverse interest he would do; and in this way Bailey bought without either actual or constructive notice of any defect or claim of defect in the mortgage. There was no error in the conclusion of the court below that the Baileys were bona fide purchasers for value, without notice of the appellants' claim, and the decree below is affirmed.