VERCRUYSSE et al. v. WILLIAMS.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1901.)

No. 1,550.

1. PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT—RELATIONS OF AGENT TO ADVERSE PARTY.

A real estate agent who is employed by an owner of land to find a purchaser therefor, and paid a commission for his services, after the owner and purchaser have concluded a contract for the sale of the land, may lawfully become the agent of the purchaser, to pass upon the title, pay the purchase money, and receive the deed in his behalf, where the purchaser has knowledge of his former relations with the vendor; and in such case the purchaser is bound by the agent's knowledge in respect to an incumbrance on the land acquired while he was so acting.

2. MORTGAGE—MISTAKE IN DESCRIPTION—NOTICE TO AGENT OF PURCHASER OF LAND.

An agent employed by a purchaser of land to act in his behalf in consummating the purchase by passing upon the title, accepting the deed, and paying the purchase price, acquired knowledge before the transaction was closed that an outstanding mortgage executed by the vendor was intended by the parties thereto to cover the land embraced in the contract, but that, through a mistake of the scrivener who drew it, a different tract was described therein. The agent, however, accepted the title and paid the consideration. Held, that the principal was affected by the knowledge of his agent, and was not an innocent purchaser as against the mortgagee, who was entitled to a reformation of the mortgage, and to enforce it against the land intended.

3. SAME—EFFECT OF RECORD.

A mortgage described the land conveyed thereby as "section 31, range 8, township 12," and as situated in a certain county, in which the mortgage was recorded. The mortgagor resided in such county, and the only land he owned therein was section 31, township 8, range 12. The

land actually described was not situated in that county. *Held*, that the mortgage showed on its face that a mistake had probably been made in the description, both because the range was given before the township, and because the land, stated as being in that county, was located elsewhere by the further description, and that the record was constructive notice to a purchaser of the mortgagor's land in that county that the mortgage was intended to cover such land, which fact he could have ascertained by inquiries which the record suggested.

Appeal from the Circuit Court of the United States for the District of Kansas.

On November 25, 1889, George J. Williams, the appellee, exhibited an original bill of complaint against Horace H. Hagan and Arthur Vercruysse for the purpose of foreclosing a mortgage on a certain tract of land situated in the county of Pottawatomie, Kan., which was executed by Horace H. Hagan on July 1, 1884. The original bill averred that the mortgage loan was made by Lucas R. Williams, but that the indebtedness was subsequently assigned to George J. Williams, the complainant below; that the debt became due July 1, 1886, but was extended by agreement until July 1, 1888; and that the land intended to be conveyed by the mortgage was section 31, in township No. 8, range 12 E. of the sixth P. M.,—the same being situated in the county of Pottawatomie,—but that by a clerical error it was described as "section 31, township number 12, range 8 east of the sixth principal meridian." The bill contained the usual averments showing a default in the payment of the mortgage indebtedness and prayed for a decree of foreclosure. The original defendant, Arthur Vercruysse, filed an answer to the original bill on January 10, 1890, wherein he averred, in substance, that he was the owner in fee simple of the tract of land first above described, situated in section 31, township 8, range 12 E. of the sixth P. M.; that he purchased the land in good faith from Horace H. Hagan on January 2, 1885, and without any notice or knowledge of the existence of any mortgage or other lien upon the property. Subsequently, on December 29, 1897, Arthur Vercruysse, the original defendant, having died, the complainant filed a supplemental bill in the nature of a bill of revivor, making Edgard Vercruysse, the sole heir of Arthur Vercruysse, a defendant in his place. In the supplemental bill it was further alleged that at the time the loan was made it was agreed and understood by and between Hagan, the mortgagor, and L. R. Williams, the original mortgagee, that the mortgage indebtedness should be secured by a mortgage on the land first above described, and that the loan was made to Hagan on the faith of that agreement, and that an error was made by the scrivener in describing the property, which error consisted in reversing the figures for the township and range, thereby locating the property in township 12 instead of township 8, and in range 8 instead of range 12. On the trial below on these issues the court found that it was the intention of Hagan to execute a mortgage covering section 31 in township 8, range 12, and that the misdescription of the land intended to be conveyed was occasioned by a mutual mistake. It accordingly entered a decree of foreclosure, directing a sale of the property which the mortgagor intended to convey, but through mistake had misdescribed. From such decree the defendants have prosecuted an appeal to this court.

David Overmyer (D. W. Mulvane, on the brief), for appellants.

W. H. Rossington and Clifford Histed (Charles Blood Smith, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

After a careful perusal of the evidence, we have no doubt whatever that the mortgage in favor of Lucas R. Williams, the plaintiff's

assignor, was executed by Hagan, the mortgagor, and received by Williams, the original mortgagee, under a mutual mistake of fact. These parties had been partners in the ranching business, and while engaged in that business had occupied section 31 of township 8, range 12, in Pottawatomie county, Kan., which belonged to Hagan. On July 1, 1884, Hagan bought a herd of horses from Williams on credit for the sum of $7,000, executing a note therefor, and agreeing to give him a mortgage on his land (that is to say, on section 31 of township 8, range 12) to secure the payment of the same. The mortgage was drawn, executed, and received in pursuance of this understanding, but through inadvertence the numbers of the township and range were reversed; the result being that a tract of land was described which Hagan never owned or claimed to own, and which was not even situated in Pottawatomie county, although the mortgage declared that the land conveyed was located in that county. Hagan testifies that he intended to execute a mortgage on the land which he owned in Pottawatomie county, and that he did not discover the error in the description until some time in the month of December, 1884. Altogether it is very plain that the parties labored under a mistake of fact in supposing that the mortgage correctly described the tract of land which Hagan owned and intended to convey. It is also obvious that it was such a mistake, due to the fault of a scrivener, as courts of equity are always willing to correct, unless by so doing the rights of some innocent third party will be jeopardized. The principal question in the case, therefore, is whether Arthur Vercruysse, who purchased section 31 of township 8, range 12, from Hagan for the sum of $8,600, receiving a deed therefor about January 2, 1885, was an innocent purchaser, whose rights should be protected, or whether, in view of all the facts, he should be deemed to have purchased with notice, actual or constructive, of the outstanding incumbrance, and of the mistake made which entitled the mortgagee to have the mortgage reformed.

The undisputed facts pertinent to the decision of this question, as disclosed by the record, are these: The mortgage, while professing on its face to convey lands, belonging to the mortgagor, situated in Pottawatomie county, in fact described a section that did not and never had belonged to him, lying in another county. Arthur Vercruysse was a foreigner residing in Belgium. In October, 1884, he appears to have come to Pottawatomie county, in company with some other persons, with a view of buying land. While there he made the acquaintance of a real estate agent by the name of A. J. Beakey. Beakey brought Vercruysse and Hagan together, and in company they went out to the tract of land in controversy and viewed it, as well as another section that lay immediately south of the land in controversy, which belonged to Hagan's brother. After examining the land, Vercruysse agreed with Hagan to buy both sections, which contained together 1,245 acres, for the sum of $14,100 of which sum $1,000 was to be paid down, and $13,100 on January 1, 1885, and to give Hagan a lease of the land for one year, provided the later should deliver a warranty deed conveying an absolute estate in fee simple on or before January 1, 1885. After making this agreement, Ver-

cruysse appears to have returned to Europe, leaving Beakey to attend to the further details of the purchase, and to report on the title, and to close the transaction if the title was found to be satisfactory. Thereupon Beakey engaged the services of an abstractor residing at Topeka, Kan., by the name of M. S. Beal, to examine the title to the land in controversy. In the abstract as made and furnished to Beakey, the mortgage in controversy in favor of L. R. Williams was mentioned, and a notation was made opposite to this conveyance that the figures giving the numbers of the section, township, and range as "31—12—8" were "supposed to mean 8—12." In a letter written by Beal to Beakey under date of December 20, 1884, the following directions were also given to Beakey:

"Get release of mortgage H. H. Hagan to Lucas R. Williams, 14 July, 1884, $7,000, on Sec. 31—12—8, recorded V page 249. This instrument does not describe the land; it says section 31, range 8, town 12; but it is recorded in this county, and it will remove all presumption if it is canceled."

Aside from these facts, it is clear beyond controversy that prior to January 1, 1885, Beakey was informed and well knew that the Williams mortgage had not been paid, and that that mortgage was intended to cover section 31 of township 8, range 12; being a part of the very land which Vercruysse had contracted to buy. The testimony, we think, fully warrants the conclusion that the duty of passing upon the abstract when it was completed, and determining whether a deed from Hagan to the land in controversy would convey a good title in fee simple, was devolved upon Beakey by Vercruysse, since the check to pay for the land was transmitted to Beakey. Beakey unquestionably became Vercruysse's agent to pay Hagan for the land, because the latter employed no other agent for that purpose. Nor does the testimony disclose that he employed any other person to determine, before payment was made, whether Hagan's deed would convey a title in fee simple, from which fact it must be inferred that he expected Beakey, as his agent, to determine that question. Vercruysse also seems to have devolved upon Beakey the duty of receiving a deed for the land, as well as the duty of making payment therefor; and the land was in fact paid for by Beakey, and Hagan's deed was delivered to and accepted by him. Contemporaneously with that transaction, and as agent for Vercruysse, Beakey also executed a lease of the land to Hagan for the term of one year at a rental of $800, and he continued to act as agent for Vercruysse for several years thereafter, until shortly before Vercruysse's death.

It is true that Beakey testified, in substance, that he sold the land as Hagan's agent, and that Hagan himself admitted that he paid Beakey $700 as a commission. But Hagan also testified that he personally agreed with Vercruysse upon the terms of sale, and that Beakey attended to closing up the transaction for and in behalf of Vercruysse after he had returned to Europe, and that Vercruysse advised him before leaving that Beakey would exercise such functions. From these statements, and from the part that Beakey actually played in the transaction subsequent to the sale, it must be inferred that, if he acted at any time as agent for Hagan, he did no

more as such agent than to find him a purchaser, and that after one had been found, and the principals had been brought together, they arranged the terms of the sale, and that Beakey thereafter became the agent of Vercruysse, with full knowledge on the part of the latter of the previous relations existing between Beakey and Hagan, and that he intrusted Beakey with the duty of examining the abstract and ascertaining that the title was perfect, and with the further duty of paying the purchase money if he was satisfied with the title. No reason is perceived why Beakey might not lawfully become the agent of Vercruysse after the agreement of sale had been consummated by the principals, provided Beakey's agency for and in behalf of Hagan merely extended to finding a purchaser and bringing the principals together, as seems to have been the case. After his agency for the vendor had ceased, and the object of his agency had been accomplished, no reason is perceived why he might not lawfully become the agent of the vendee for the purpose of examining the title, paying the purchase money, and seeing that the agreement of the vendor was faithfully executed. It is certain that he could accept such employment if his employer was aware of the nature and extent of the previous agency, and we are satisfied that he did have such knowledge. In the case of Coal Co. v. Bailey, 36 C. C. A. 229, 231, 94 Fed. 258, this court held that a principal who is aware that his agent is also acting as agent for one who is adversely interested in the transaction, yet consents that he may continue to serve as his own agent, is estopped from denying that he had such knowledge as his agent had during the course of the negotiation. There is much greater reason, of course, for holding that a vendee who knowingly employs as his agent to close up a given transaction, and to see that it is consummated in pursuance of the terms of a written contract existing between the principals,—a person who has previously acted as agent for the vendor, but whose employment has ceased,—should be precluded from denying knowledge of those facts with which the agent became acquainted after he was thus employed by the vendee, and before the written agreement was executed in behalf of the vendee by the payment of the purchase money. It follows, as a matter of law, from what has been said, that if Vercruysse employed Beakey as his agent to close up the transaction with Hagan after the agreement of sale was signed, and intrusted him with the duty of passing upon the title and paying the purchase money, then he is affected with all the knowledge which Beakey possessed on January 2, 1885, when he paid the purchase money, and cannot be esteemed an innocent purchaser of the property in controversy, because Beakey was well aware that the Williams mortgage was unpaid, and that it was intended to cover the land in controversy.

There is yet another good and sufficient reason, in our opinion, why Vercruysse cannot claim protection as an innocent purchaser of the land in controversy. He is presumed to have had knowledge of the contents of the Williams mortgage, because it was recorded in Pottawatomie county, was executed by Hagan, and professed to convey land of his which was located in that county. These facts affected an intending purchaser with knowledge of the contents of the

mortgage. That instrument showed on its face that a mistake had probably been made by the scrivener in drafting it, because the number of the range was stated before the number of the township, which in itself would have been regarded as an unusual circumstance by any one who was reasonably familiar with the manner in which land situated within governmental surveys is usually described. Besides, the statement that the land conveyed was located in Pottawatomie county was the portion of the description that was most apt to be correct, whereas the description by township and range located it elsewhere. This was also a very significant fact which would have attracted the attention of any prudent person, and led to further inquiry. The abstractor, Beal, assumed at once when he read the mortgage that the numbers of the township and range had been transposed by mistake, and so advised Beakey in his first communication concerning the title. Indeed, it is hardly possible to conceive how any person of ordinary intelligence could have reached a different conclusion or drawn a different inference. The law is very well settled that a purchaser of real property cannot willfully close his eyes to facts or circumstances appearing upon the record which would naturally excite suspicion in the mind of any one; the rule being that if one has knowledge of facts or circumstances which would put a prudent person, acting in good faith, on inquiry, and he fails to inquire, knowledge will be imputed to him of all the facts to which a properly directed inquiry would have led. Coal Co. v. Doran, 142 U. S. 417, 437, 438, 12 Sup. Ct. 239, 35 L. Ed. 1063; Paxson v. Brown, 10 C. C. A. 135, 61 Fed. 874, 27 U. S. App. 49, 62, 63; Burwell's Adm'rs v. Fauber, 21 Grat. 446, 463; Mettart v. Allen, 139 Ind. 644, 39 N. E. 239; Roan v. Winn, 93 Mo. 503, 510, 511, 4 S. W. 736. More directly in point, however, is the case of Partridge v. Smith, 18 Fed. Cas. 1281, 2 Biss. 183, where it appeared that a grantor made a mistake in drafting a mortgage, by transposing the numbers of the township and range, by reason whereof it was not applicable to any land in the county, and in which it was held that this in itself was a circumstance sufficient to put a subsequent purchaser from the grantor on inquiry, inasmuch as the mortgage further described the land intended to be conveyed as situated in the county where the mortgage was recorded. While this case has been criticised on one occasion (Bailey v. Galpin, 40 Minn. 319, 322, 41 N. W. 1054) as carrying the doctrine of constructive notice to a great length, yet, on the other hand, it has been cited with approval in another state (Schweiss v. Woodruff, 73 Mich. 479, 41 N. W. 511); and it seems to us to enunciate a sound and just doctrine, especially when a deed or mortgage containing such a manifest misdescription expressly locates the land intended to be conveyed within the county, and the grantor owns but one tract therein. As the records in these days are usually scanned by intending purchasers of real property, we can conceive of no circumstance which would be more apt to excite suspicion and put a purchaser upon inquiry. The record itself in such cases, without further inquiry, would advise any person of ordinary intelligence, as it did in the present instance advise Beal, of the nature of the mistake, and how it had probably occurred. We accordingly

conclude that Vercruysse was put on inquiry by the condition of the record, and that knowledge of the Williams mortgage should be imputed to him, because the slightest inquiry would have developed the fact that it was intended to be a lien on section 31 of township 8, range 12 E., and had not been paid.

Finding no error in the decree of the lower court, the same is hereby affirmed.