### CENTRAL COAL & COKE CO. v. GEORGE S. GOOD & CO.

(Circuit Court of Appeals, Eighth Circuit. February 16, 1903.)

#### No. 1,692.

1. CONTRACTS—SUBSEQUENT ACQUIESCENCE OF BOTH PARTIES NOT ESSENTIAL TO LIABILITY OF EITHER.

Either party to a contract may perform his part of it, and charge the other party with liability thereunder, without the consent or acquiescence of the latter. But a subsequent agreement or acquiescence of both parties is requisite to cancel the agreement or to relieve either party from its obligations.

2. CONTRACT OF SALE—ACCEPTANCE OF PROPERTY AS ANOTHER'S—PAYMENT OF THIRD PARTY—LIABILITY FOR PRICE.

The fact that one who has knowingly received and used the property of his contractor or vendor delivered under the agreement has notified the contractor when he received it that he refused to accept it as his property, and that he accepted it as another's, and the further fact that he has paid the third party for it, do not relieve the vendee from liability to the vendor for the purchase price or value of the latter's property which the vendee has received.

8. PRINCIPAL AND AGENT—NOTICE TO AGENT—EFFECT ON PRINCIPAL.

Where an agent acts for himself in his own interest, and adversely to his principal in a given negotiation or transaction, neither notice

---

¶ 1. See Contracts, vol. 11, Cent. Dig. § 1146.

to nor the knowledge of the agent can be lawfully imputed to the principal.

**4. CONTRACT BETWEEN THIRD PARTIES—PAROL EVIDENCE—ADMISSIBILITY.**

The rule that parol evidence is inadmissible to contradict or vary the terms of a written contract is inapplicable in a case in which the agreement assailed is between strangers to the parties to the suit, because the former cannot, by their ignorance, carelessness, or fraud, estop the litigants from proving the truth.

(Syllabus by the Court.)

In Error to the United States Court of Appeals in the Indian Territory.

The Central Coal & Coke Company, a corporation, brought an action in the United States Court of the Indian Territory for the Central District against Good & Co., another corporation, to recover the sum of $9,024.42 and interest for lumber and piling which it had furnished to the defendant. It alleged in its complaint that on December 15, 1894, it agreed with the defendant to furnish it lumber and piling; that it had complied with its contract, and there had become due to it thereunder $9,024.42. And for a second cause of action it alleged that between May 19, 1895, and October 1, 1895, it had delivered to the defendant piling which was of the value of $6,268.48, for which the defendant refused to pay. Good & Co. answered that every allegation in the complaint was false; that it admitted that it owed the plaintiff $1,201.04; and that it ought not to be required to pay to the plaintiff any more, because it had paid to M. W. Osborn, under a contract made between the defendant and Osborn on December 7, 1894, the very sum of money which the plaintiff demanded. There was a trial, verdict and judgment for the amount admitted by the defendant, an appeal from this judgment to the Court of Appeals of the Indian Territory, and an affirmance of that judgment. The writ of error to this court challenges the proceedings which have resulted in the affirmance of this judgment.

Upon the trial of the action before the jury the following facts were established without dispute: On December 15, 1894, Good & Co., which was a general contractor for the construction of the Choctaw, Oklahoma & Gulf Railway, made a written contract with the coal and coke company whereby the latter contracted, among other things, "to furnish all materials" necessary to complete the roadbed upon that portion of the railway between South McAlester, in the Indian Territory, and Oklahoma City, in Oklahoma territory; and Good & Co. promised to pay certain prices for these materials, among which were these: "For all piles delivered f. o. b. South McAlester, Indian Territory, 12½ cents per lineal foot; for all piles delivered f. o. b. Oklahoma City, Oklahoma territory, 16 cents per lineal foot." Eight days prior to the making of this contract, and on December 7, 1894, Good & Co. had made a written agreement with M. W. Osborn whereby the latter contracted to "furnish all the materials" requisite and necessary to complete the roadbed between South McAlester and Oklahoma City, and Good & Co. promised to pay him therefor certain prices, among which were these: "For piling furnished, delivered, and driven in bridges, 21 cents per lineal foot; for piling hauled from end of track and driven in bridges, 18 cents per lineal foot." The South Canadian river made a natural division of the work of construction into two parts—one between South McAlester and the river, and the other between the river and Oklahoma City. The controversy in this case relates solely to the piles furnished west of the South Canadian river. The coal and coke company was not aware during the spring and summer of 1895 of the contract between Osborn and Good & Co., and it furnished Good & Co., and that corporation used in the construction of the railroad west of the South Canadian river, piling which amounted at the contract price to more than $6,000, for which, in the judgment below, the plaintiff has recovered nothing. On January 20, 1895, the coal and coke company made an agreement with Osborn that he should furnish for it, and deliver to Good & Co., the piling required west of the South Canadian river for 13½ cents per lineal foot. Osborn complied with this contract, and the coal and coke company paid

him for the piling pursuant to its agreement. At or near the inception of the delivery of this piling Good & Co. was notified that it was the property of the plaintiff, and was delivered under its contract pursuant to an agreement which it had made with Osborn that he should furnish and deliver the piling for the coke company. During the entire course of the delivery both Osborn and the coke company repeatedly informed Good & Co., and insisted that this piling was the property of the coke company; that it was delivered under its contract; and that it was paying Osborn for procuring and furnishing the piling pursuant to its contract with him. While Good & Co. protested to Osborn against accepting the piling as the property of the coke company, and informed him that it accepted it as his property under the contract of Good & Co. with him, neither the coke company nor Osborn assented to this view of their property rights, and Good & Co. put the piles into the railroad. Speaking of his transactions with Osborn, the superintendent of Good & Co., testified: "Q. He notified you as early as May that the timber he was furnishing was the plaintiff's timber, and that he was furnishing it under contract with them? A. Yes, sir. Q. Plaintiff also notified you to that effect, didn't they? A. Yes, sir; May 20th. Q. So you had notice both from Osborn, who was getting it out and delivering it, and from the plaintiff, that it was not Osborn's piling, but it was the piling that belonged to the plaintiff? A. Yes, sir. Q. With that knowledge you received it from Osborn? A. Yes, sir. Q. And used it in your road? A. Yes, sir. Q. And did not pay plaintiff for it? A. No, sir; we paid Osborn. Q. Did plaintiff consent to your paying Osborn for it? A. Don't know that they did. Q. Don't know that they didn't? A. I don't suppose they did consent to it, or anything about it, perhaps." During the entire transaction Osborn insisted that he was not entitled to, and would not receive, payment for the piling, but that under his contract he was entitled to 18 cents per lineal foot for hauling it from the end of the track and driving it in bridges. The alleged errors of which the plaintiff complains assail the rulings of the court upon the introduction of evidence and its charge to the jury.

W. C. Perry, Ira D. Oglesby, Sam H. West, and J. H. Gordon, for plaintiff in error.

C. B. Stuart and Yancey Lewis, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

May one who has knowingly accepted and applied to his own use property of his contractor, furnished by the latter under the agreement between them, escape payment of the contract price or value of the property delivered by proof that when he accepted and used it he notified his contractor that he refused to receive it as his property, and accepted it as the property of another, and that he paid the third party therefor? Good & Co., the defendant below, made a written agreement with the plaintiff, the Central Coal & Coke Company, to pay it for the piling the latter furnished under its contract. The coal and coke company furnished the piling which is the subject of this controversy under its agreement with Good & Co. by employing and paying Osborn to prepare and deliver the piles to the defendants for the price of 13½ cents per lineal foot. Good & Co. knew, before it paid Osborn for these piles, that they were the property of the plaintiff, that the latter had employed and paid Osborn to prepare and deliver them for it, and that both the plaintiff and Osborn had tendered and delivered the piling as the property of the plaintiff, and

not as the property of Osborn, in fulfillment of the contract between the plaintiff and the defendant, and that both the plaintiff and Osborn had repeatedly and continually insisted that these piles were the plaintiff's property, and were so delivered for it. Under these circumstances the plaintiff seeks to recover the contract price, or the value of its piles, and the defendant objects to paying for them because the fact was, although this fact was unknown to the plaintiff when it furnished the piles, that Good & Co. had made a contract with Osborn before it made the agreement with the plaintiff by which Osborn had undertaken to furnish the very piling which the plaintiff furnished by means of its contract with Osborn, and the defendant protested and insisted that it refused to accept the piles under its contract with the plaintiff as its property, and that it took them under its contract with Osborn as his property.

The court was requested to charge the jury, under this state of facts, that no payment for the piles to Osborn would affect the plaintiff's right to recover. It refused to grant this request, and instructed the jury (1) that such a payment was a good defense to the plaintiff's cause of action, unless they found that the defendant not only knew of, but acquiesced in, the furnishing and delivery of the piles by Osborn as the plaintiff's property; and (2) that, if the defendant refused to accept the piling as plaintiff's, but accepted it as Osborn's property, and so notified Osborn, and if Osborn was acting as the agent of the plaintiff, and if, after this notice to Osborn, the plaintiff continued to furnish piling, it could not recover the purchase price or value thereof. These instructions appear to have been given under a strange misapprehension of the legal relations of the parties to this action and of their rights between themselves, which probably resulted from a confusion of their relations with each other with their relations to Osborn. But this is an action between the coal and coke company and Good & Co. Osborn is not a party to it, and the rights of the parties to it against and their respective liabilities to him are not here for our determination. The coal and coke company contracted to furnish the piling in controversy to Good & Co., and it has done so. The only question here is whether or not the fact that Good & Co. refused to accept these piles as the plaintiff's, and received them as Osborn's, relieved it from the obligation of its contract with the coal and coke company, and from paying the plaintiff for its property. The question does not seem to be doubtful or difficult. Simple illustrations make it plain. A. agrees to sell his horse to B. for a stipulated price. A. subsequently delivers his horse. B. notifies him that he refuses to accept him as A.'s horse, but that he receives him as C.'s. B. pays C. for the horse. Has B. relieved himself from his liability to pay A. for his horse? D. contracts with E. to furnish him with a thousand cords of wood for an agreed price. D. furnishes the wood. E. takes and uses it, but notifies D., as it is delivered, that he refuses to accept it as his property, but that he takes it as the property of F. Does such a notice transfer the ownership of the wood from D. to F., or release E. from his agreement to pay D. for it? And if E., knowing that the wood was D.'s, paid F. for it, can that

in any way affect his obligation under his contract to pay D. for it? These questions bear their own answers.

When these piles were delivered, the coal and coke company had agreed to furnish them to Good & Co., and the latter had agreed to pay the coke company for them. Through Osborn, its subcontractor to provide them, the coke company tendered and delivered them to Good & Co. as its property in performance of its contract. The defendant was obligated by its contract with the coke company to take and to pay for them. There were two parties to this agreement, and the consent of both these parties was indispensable to its abrogation; but either of them had the right to insist upon its performance. Here was the fatal error of the courts below. They assumed that after the contract was made the acquiescence of both parties in its performance was essential to the liability of either thereunder, when the true rule was that both parties had finally acquiesced in its performance when they signed their contract, and either party had the right to perform it on its part and to insist upon its performance by the other party, while the acquiescence or agreement of both parties was indispensable to its abrogation or to the relief of either from its performance or its liability to perform. Either party to a contract may perform his part of it, and charge the other party with liability thereunder, without the farther consent or acquiescence of the other; but the subsequent agreement or acquiescence of both the parties is requisite to cancel the contract, or to relieve either party from its obligations.

Doubtless Good & Co. might have escaped liability to the coke company for the contract price or value of the piling the latter furnished by refusing to receive it, and by leaving it in the possession of the coke company or of its subcontractor, Osborn. But it would still have been liable for damages for its refusal to perform its contract—for its refusal to accept the piles. When it received and used the piles tendered by the plaintiff in performance of its agreement, its obligation to pay for them became absolute. Its protestation that it refused to receive them as the plaintiff's property, its assertion that it took them as Osborn's, and its payments to Osborn neither transferred the title to the piles from the plaintiff to Osborn nor affected the defendant's liability to pay to the plaintiff for its property either according to the terms of the contract, or according to its true value. The fact that one who has knowingly received and used the property of his contractor delivered under the agreement notified the latter when he received the property that he refused to receive it as the contractor's property, and that he accepted it as the property of another; and the further fact that he paid the third party for it will not relieve him from liability to the contractor for the purchase price or value of his property which he has received.

The charge of the court that, if Osborn was acting as the agent of the plaintiff, if the defendant refused to accept the piling as plaintiff's, but accepted it as Osborn's, and so notified him, and if thereafter Osborn continued to furnish the piling for the plaintiff, the latter could not recover in this suit, was erroneous, not only for the reason which has already been considered, but also because there was no evidence in the record that Osborn ever had or claimed any

authority, either actual or apparent, to appropriate to himself, or to transfer from his contractor to himself, the property of the plaintiff. The record shows that the only relation between the plaintiff and Osborn was that of a subcontractor to his contractor, and that the defendant was aware of the attitude in which these parties stood to each other while the piling was in process of delivery. The theory of this charge of the court is that, if one informs a subcontractor who is furnishing materials for his contractor, and who is being paid therefor by the latter, that he will not accept these materials as the property of the contractor, but will take them as the property of the subcontractor, and will pay him for them, that information is notice of that fact to the contractor, and estops him from recovering the price or value of the materials which he has furnished through his subcontractor. But it is not within the apparent or the actual scope of the authority of a subcontractor to transfer or to consent to the conveyance of either the property or the claim for the price or value of the property which the contractor employs and pays him to furnish from the latter to himself, so that notice of such a transaction to the subcontractor is no notice to the contractor. And, even if such an authority existed, the personal interest of the subcontractor in such an affair would be so adverse to that of his principal that notice to the former would not charge the latter. Where an agent acts for himself in his own interest and against the interest of his principal, without the latter's consent, in a given negotiation or transaction, neither the notice nor the knowledge of the agent can be lawfully imputed to the principal. Pine Mountain Iron & Coal Co. v. Bailey, 94 Fed. 258, 261, 36 C. C. A. 229, 232; Surety Co. v. Pauly, 170 U. S. 133, 156, 18 Sup. Ct. 563, 42 L. Ed. 987; Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736; Waite v. City of Santa Cruz (C. C.) 89 Fed. 619, 630; Barnes v. Gaslight Co., 27 N. J. Eq. 33, 37; Winchester v. Railroad Co., 4 Md. 231, 241; Davis Improved Wrought Iron Wagon Wheel Co. v. Davis Wrought Iron Wagon Co. (C. C.) 20 Fed. 699, 702; Thomson-Houston Electric Co. v. Capital Electric Co. (C. C.) 56 Fed. 849, 853; Bank v. Cunningham, 24 Pick. 270, 276, 35 Am. Dec. 322; Mechem, Ag. § 723.

There was another error in the trial of this case. Good & Co. made two contracts, one with Osborn and one with the plaintiff, which upon their faces require both Osborn and the plaintiff to furnish the piles in controversy, the piles required for the construction of the railroad between the South Canadian river and Oklahoma City. But the contract with Osborn provided in one of its clauses that the accepted tender of the contractor, the specifications for the doing of the work, and the several parts of the contract should be taken and construed together, and Osborn testified that his bids upon which the contract was based were for furnishing and driving the piling required for the construction between South McAlester and the South Canadian river and for hauling and driving the piles needed for the same purpose between the South Canadian river and Oklahoma City, but that he never made any bid for furnishing the piling west of the river. Notwithstanding this provision of the contract and this evidence, the court refused to permit this witness to testify that the pro-

vision of the agreement for furnishing piling in his contract related only to the piling east of the river, and charged the jury that the legal effect of this contract was that Osborn undertook to furnish all the piling west of the river, regardless of his testimony or his understanding. Now, the proffered testimony of Osborn had a strong tendency to prove—if, when taken in connection with the evidence relating to the bids, it did not establish—the proposition that the real intention of the parties to this contract was to make an agreement for the furnishing of the piles east of the river, and to make none for providing them west of it. Nor was this evidence obnoxious to the objection which was urged against it that it tended to contradict or vary the terms of the written contract, because the bids which did not provide for the furnishing of the piling west of the river were as much a part of the written agreement as any other part of it, and because this was not a contract between the parties to this litigation. The rule that parol evidence is inadmissible to contradict or vary the terms of a written contract is inapplicable to a case in which the agreement assailed is between strangers to the parties to the suit, because the former cannot by their ignorance, carelessness, or fraud estop the litigants from proving the truth. 1 Greenl. Ev. § 279; Cunningham v. Milner, 56 Ala. 522; Talbot v. Wilkins, 31 Ark. 411; Hussman v. Wilks, 50 Cal. 250; McMaster v. Insurance Co. of North America, 55 N. Y. 222, 14 Am. Rep. 239; Brown v. Thurber, 77 N. Y. 613, 58 How. Prac. 95; Bell v. Woodman, 60 Me. 465; Tobey v. Leonard, 2 Cliff. 40, Fed. Cas. No. 14,067; Edgerly v. Emerson, 23 N. H. 555, 55 Am. Dec. 207.

The judgments below are reversed, and the case is remanded to the United States Court for the Central District of the Indian Territory, with directions to grant a new trial.