## LAWRENCE LEATHER CO. v. NORTON, LILLY & CO.

(District Court, S. D. New York. April 30, 1926.)

1. **Shipping ⟨key⟩106—Conditions of bill of lading may be incorporated by reference in dock receipt.**

It is the law of the federal courts that, where a dock receipt clearly states that it is subject to conditions in carrier's bill of lading, such conditions are to be regarded as part of the agreement.

2. **Carriers ⟨key⟩158(1).**

Carrier may regulate extent of its liability, according to different freight rates.

3. **Principal and agent ⟨key⟩180—Notice to agent representing both parties held notice to party.**

Notice to an agent who, with their knowledge and consent represents both parties to a transaction, is notice to either of them, to whom it would be notice if the agent represented him alone.

4. **Shipping ⟨key⟩140.**

Liability of ship *held* limited by bill of lading referred to in dock receipt and accepted by shipper without objection.

5. **Carriers ⟨key⟩91.**

A carrier is liable for conversion only when the conversion is by the carrier itself.

In Admiralty. Suit by the Lawrence Leather Company against Norton, Lilly & Co. Decree for libelant.

Bailey & Single, Theodore L. Bailey, Arthur E. Muller, and Loring R. Lecraw, all of New York City, for libelant.

Nathan A. Smyth and William E. Collins, both of New York City, for respondent.

GODDARD, District Judge. The libelant seeks to recover $1,827, the alleged value of leather pilfered from one of four cases shipped by the steamship Ablanset from New York to Lisbon, Portugal, on or about September 20, 1919. The respondents admit the loss, but contend that their liability is limited to the sum of $38.82 under clause XV of its bill of lading, which reads as follows:

"Clause XV. The freight on the cargo carried hereunder is regulated by the value thereof and is based on a valuation of not exceeding one hundred dollars per package unless a greater value is declared and written in the bill of lading. * * *"

Libelant contends that the merchandise was pilfered while it was on the respondents' dock, and that a dock receipt only had been issued by respondents, therefore it is not limited by this clause in the bill of lading; that, if the conditions of any bill of lading did apply, it was the form of bill of lading which it had hitherto received when sending freight on ships for which respondents were general agents, and not the form of bill of lading which the Ablanset, a new ship, had adopted. The material portion of the dock receipt was as follows:

"Norton, Lilly & Co.,
"Steamship Agents and Brokers, Produce Exchange Building.
"New York, Sept. 20, 1919.
"Received in apparent good order from Hilton & Son a/c A. C. Lawrence Leather

Co., for shipment by the steamship Ablanset to Lisbon at the shipper's risk from fire, flood, or other causes beyond our control, and subject to the conditions expressed in our steamer form of bill of lading, including liberty to substitute any other steamer."

Norton, Lilly & Co. were the general agents for some 25 steamship lines, and it was customary for them to use the particular form of bill of lading required by the respective ships. It appears that the bills of lading, which hitherto had been delivered to the libelant when making shipments upon steamers for which the respondents were agents, had usually contained a clause purporting to limit the value of freight to $20 per cubic foot, on which basis the rate of freight is adjusted, unless notice of true value is given and especial freight paid thereon, which limitation clause had been held by the Supreme Court of the United States to be null and void. This was the maiden voyage of the Ablanset, and 11 days before libelant's merchandise was delivered at her dock a form of bill of lading had been made up for her, and for ships engaged in the "Spanish-Portugese" service, and this bill of lading contained the clause XV referred to, limiting the value to $100 per package unless a greater value was declared.

[1] The law is established in the federal courts that, where a dock receipt clearly states that it is subject to conditions in carrier's bill of lading, such conditions are to be regarded as part of the agreement. South Atlantic S. S. Line v. London-Savannah Naval Stores, Inc., 255 F. 306, 166 C. C. A. 476; The Susquehanna (D. C.) 291 F. 698, 1923 A. M. C. 930; Brennan Packing Co. v. Cosmopolitan Shipping Co. (D. C.) 14 F.(2d) 971, 1925 A. M. C. 1385. See, also, Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Dunbar v. Railway Co., 62 S. C. 414, 40 S. E. 884.

[2] It is settled law that a carrier may regulate the extent of its liability according to different freight rates. If such limitation begins to be effective only when the bill of lading is actually delivered to the shipper, there would be a gap during which, regardless of the value of the cargo or rate of freight payable, the carrier would be liable for the full value. This, I think, would be contrary to the understanding of the parties and unreasonable. It seems to me the point to be determined is which of these two forms of bills of lading is to be regarded as the one referred to in the dock receipt.

[3, 4] Hilton & Son were the regularly employed agents of the libelant, in arranging for shipments of their merchandise abroad, whenever such shipments were made. They also acted as brokers or agents for the respondents, receiving commissions upon the freight they obtained for the ships that respondents represented as general agents. It also appears that it was customary for Hilton & Son and other freight brokers to insert, on the printed form bill of lading of the particular ship furnished to them by respondents, description of freight, destination, etc., and deliver it to the respondents with the dock receipt and cheque for the freight, and in return respondents would sign the bill of lading and return it to Hilton & Son. The duplicate original bill of lading, though not signed, which was made out by Hilton & Son, bears the date September 20th, and the clear inference is, from all the evidence, that it was made out by Hilton & Son on that day, and that Hilton & Son at this time, or probably previously, had information that this was the form bill of lading required by the Ablanset. Notice which Hilton & Son had of the contents of the Ablanset bill of lading was notice to their principal, the libelant, for "notice to an agent, who with their knowledge and consent represents both parties to a transaction, is notice to either of them to whom it would be notice if the agent represented him alone." 2 Corpus Juris, § 552. See, also, Pine Mt. Iron Co. v. Bailey, 94 F. 258, 36 C. C. A. 229. Therefore it follows that the limitation of value on the freight contained in the Ablanset's bill of lading applies.

[4] It might be added that, when the copy of the bill of lading was delivered to the libelant, it expressed no dissatisfaction with the terms of the bill of lading, or a desire to have inserted in the bill of lading the actual value of the merchandise upon the payment of an increased rate. Libelant contends that the respondents are liable for conversion, but the difficulty with this is that there is no proof that the merchandise was stolen by employees of the respondents, although it is apparent that the pilfering took place on September 21st, after the merchandise had left the dock and was on board the ship. Moreover, a carrier is liable for conversion only when the conversion is by the carrier itself. D'Utassy v. Barrett, 219 N. Y. 420, 114 N. E. 786, 5 A. L. R. 979; Moore v. Duncan, 237 F. 780, 150 C. C. A. 534; American Express Co. v. Levee, 263 U. S. 19, 21, 44 S. Ct. 11, 68 L. Ed. 140.

Accordingly libelant is entitled to a decree for the sum of $38.82 only.