## REYNOLDS et al. v. MOSELEY.

Circuit Court of Appeals, Eighth Circuit.
May 8, 1929.

No. 8180.

T. J. Gaughan, J. T. Sifford, J. E. Gaughan, and Elbert Godwin, all of Camden, Ark., and L. B. Smead, H. P. Smead, and Robert C. Knox, all of El Dorado, Ark., for appellants.

Laurence B. Finn, of Bowling Green, Ky. (Marsh, McKay & Marlin, of El Dorado, Ark., and Finn & Sims, of Bowling Green, Ky., on the brief), for appellee.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a bill in equity brought by appellee, G. H. Moseley, against Eula Greer Bashaw, S. R. Bashaw, her husband, J. D. Reynolds, W. W. Brown, Standard Oil Company of Louisiana, and Standard Pipe Line Company of Louisiana. Jurisdiction is based upon diversity of citizenship and requisite amount involved.

The bill seeks to remove a cloud upon the title of the alleged interest of plaintiff in an oil and gas lease, which cloud consists of the claim of defendants Reynolds and Brown to the same interest in the lease, by virtue of certain conveyances to them. The bill also seeks an accounting of royalties covering the oil run under said lease by the defendants oil company and pipe line company during the period of alleged ownership by plaintiff of an interest in the lease.

The trial court by its decree found that ownership was in plaintiff as alleged in the bill; that defendants Reynolds and Brown had no right, title, or ownership in the interest in the lease claimed by plaintiff; that plaintiff was entitled to have the cloud removed from his title; and that plaintiff was entitled to an accounting of the royalties appertaining to his interest in the lease since the date at which he became owner thereof.

Among the facts disclosed by the evidence, the following are not in dispute: May 19, 1922, Buchanan Graves and wife made an oil and gas lease to J. R. Crawford covering certain lands of which Graves was the owner, among them the northwest $\frac{1}{4}$ of the southeast $\frac{1}{4}$, section 3, township 16 south, range 15 west, in Union county, Arkansas. The royalty retained by Graves under said lease was one-eighth of the production. The lease was duly recorded May 31, 1922. January 17, 1923, Graves and wife conveyed to Eula Greer an undivided one-half interest to the oil, gas, and other minerals in the same land, subject to the Crawford lease, with the right to receive one-half of the royalties accruing thereunder. This conveyance was duly recorded January 17, 1923. On the same day Graves and wife made a similar conveyance covering an undivided one-fourth interest to Ernest Greer. This conveyance was duly recorded January 17, 1923. June 15, 1923, Eula Greer sold to G. H. Moseley an undivided one-fourth interest in the oil, gas, and other minerals in the same land, with the right to collect one-fourth of the royalties accruing under the Graves-Crawford lease. The consideration was $6,000. By inadvertence of the scrivener the description of the land in the deed read northwest $\frac{1}{4}$ of the *northeast* $\frac{1}{4}$, section 3, township 16 south, range 15 west, instead of northwest $\frac{1}{4}$ of the *southeast* $\frac{1}{4}$, section 3, township 16 south, range 15 west. The deed was duly executed by Eula Greer and was duly recorded June 15, 1923. On or about June 20, 1923, Ernest Greer and wife conveyed to Eula Greer the interest of Ernest Greer in and under the Graves-Crawford lease, which had been acquired from Graves as above mentioned on January 17, 1923. This deed from Ernest

Greer and wife to Eula Greer was duly recorded in Union county September 18, 1923, and in Ouachita county August 14, 1923.

On or about August 13, 1923, Eula Greer made a deed to J. D. Reynolds and W. W. Brown purporting to convey *all* of the oil, gas, and other minerals in and under two parcels of land, one of which was the land in controversy, viz.: The northwest ¼ of the southeast ¼, section 3, township 16 south, range 15 west. This deed was duly recorded in Ouachita county August 14, 1923, and in Union county September 18, 1923. October 8, 1923, Eula Greer made a quitclaim deed to J. D. Reynolds and W. W. Brown purporting to convey *all* of the oil, gas, and other minerals in and under the same lands described in the former deed. This deed contained the following clause:

"Subject, however, to any existing oil and gas lease or leases covering or affecting the above land on the date of this instrument; this deed conveying, however, all my right, title and interest in and to all oil royalties, gas rentals or delay rentals due, or to become due, under such lease or leases."

The deed also contained a recital that it was made for the purpose of correcting a clerical error in the former deed.

S. R. Bashaw was the agent of Eula Greer at the time when she purchased from Graves an interest in the oil and gas in and under the land in controversy; also when she made the deeds to Moseley and to Reynolds and Brown above mentioned. It was the intention of Eula Greer and of Bashaw, her agent, and of the attorney who drew the deed to Moseley, that the land covered by the deed should be the northwest ¼ of the southeast ¼, section 3, township 16 south, range 15 west. Eula Greer did not own an interest in any other land in section 3.

It is plain from the foregoing undisputed facts that there is no controversy between Eula Greer Bashaw and S. R. Bashaw, on the one hand, and G. H. Moseley on the other, as to the rights of the latter in the land in question. Moseley's sole controversy is with Reynolds and Brown, and the vital question in the dispute is whether Reynolds and Brown were innocent purchasers under their deeds and without notice of the rights and interest of Moseley in the northwest ¼ of the southeast ¼, section 3, township 16 south, range 15 west.

We turn to the record for additional facts disclosed by the evidence. Bashaw and Reynolds were intimately acquainted. They often carried on business transactions together as partners. Reynolds had offices at Camden.

Bashaw's headquarters were at El Dorado. At the time of the Moseley purchase Mr. McGuire, who was a friend of Moseley, and assisting him, went to Camden with a view to purchasing oil royalties. He there met Reynolds, who sent him over to Bashaw at El Dorado. The result was the Moseley sale. A day or two later Bashaw saw Reynolds, who inquired whether he met McGuire. Bashaw told Reynolds that he had made a sale of one-fourth interest in the Graves royalties. Reynolds knew the property, knew that Miss Greer owned an interest in it, and that Bashaw was her agent. They talked about the sale, and the price, $6,000. Reynolds said it was too cheap on account of having a well on it and two good wells in that part of the field. A short time later Bashaw went to Kentucky. Before going he listed with Reynolds for sale the properties owned by Miss Greer, including the remaining property she then owned in section 3, viz., a one-half royalty. Reynolds wrote down the interest Miss Greer owned in each parcel, a description of the land, and the price asked. While Bashaw was in Kentucky, Reynolds wired him about purchasing one or more parcels at the prices listed. Bashaw returned to Camden and sold to Reynolds and Brown Miss Greer's remaining one-half interest in section 3, and her interest in a piece in section 34.

Though the deed from Miss Greer to Reynolds and Brown purported to convey *all* the oil, gas, and other minerals in and under the 40 in section 3, Reynolds testified that he knew Miss Greer did not own the whole interest, but that under the wording of the deed he expected to get whatever interest she did own. The explanation offered of why the deeds were drawn to cover *all* of the oil, gas, and other minerals in and under the northwest ¼ of the southeast ¼ of section 3, township 16 south, range 15 west, although it was known that Miss Greer owned only a part thereof, is that two parcels were included in the same deed, and that Miss Greer owned different interests in each. The explanation is a lame one. The quitclaim deed given later by Miss Greer to Reynolds and Brown expressly recognized that there were outstanding leases to which the deed was subject. The quitclaim deed recites that it was given to correct a clerical error in the prior deed; but neither Reynolds nor Brown were able to point out what the clerical error was.

December 13, 1923, Reynolds and wife conveyed to Sam K. Baird an undivided one-fourth interest in and to the oil, gas, and other minerals in and under the land in question, subject to the Graves-Crawford lease,

but with the right to collect one-fourth of the royalty accruing thereunder.

The deeds from Eula Greer to Reynolds and Brown had not specified the fractional interest which each took under the deeds. Accordingly, on December 13, 1923, either to satisfy the grantee Baird, or the oil company which was running the oil, or for some other purpose, Reynolds and Brown executed, acknowledged, and a little later recorded an affidavit. This affidavit set forth that the deed from Eula Greer to Reynolds and Brown covered a one-sixteenth royalty interest, and that it was held by Reynolds and Brown, one thirty-second interest by each. When confronted with this affidavit on the trial, the only explanation that Reynolds and Brown could give was that the affidavit was incorrect.

Mr. L. B. Smead was the attorney for Reynolds and Brown in examining the title and drawing the deeds at the time of their purchase from Miss Greer. Mr. Smead was also attorney for the oil company which was running the oil under the Graves-Crawford lease. Moseley under his deed had been receiving for several months royalties from the oil company. This fact must have become known to Mr. Smead in making the examination, and, presumably, also to Reynolds and Brown. The custom was that when a sale was made by a royalty holder from property that was being operated, the transfer of the rights and division orders were always made immediately after the sale. Shortly after Reynolds and Brown secured their deeds, Mr. Smead had correspondence with the oil company about its payment of royalties to Moseley. It was stopped.

The foregoing facts were supported by ample evidence, although the testimony was conflicting as to some of them.

In addition to all of this, Reynolds and Brown had constructive notice of the following facts which appeared in instruments duly recorded in the proper public records: That Graves and wife executed an oil and gas lease to Crawford dated May 19, 1922, covering northwest ¼ of the southeast ¼ of section 3, township 16 south, range 15 west; that this lease did not cover the northwest ¼ of the northeast ¼ of section 3, township 16 south, range 15 west; that this lease was recorded in the office of the recorder of Union county in Book 133 at page 186; that Graves and wife conveyed to Eula Greer on January 17, 1923, an undivided one-half interest in the royalties under the Crawford lease; that this conveyance to Greer showed on its face that it was subject to the Graves-Crawford lease, and made reference to that lease by book and page of the records.

The facts above outlined which appeared in duly recorded instruments in the chain of title of Reynolds and Brown, together with the facts also above outlined, which the evidence shows they knew apart from the record, were such as unquestionably would put a reasonably prudent man upon inquiry as to an outstanding interest derived from Eula Greer in the royalties under the Graves-Crawford lease; and the evidence clearly shows that the most casual inquiry would have revealed the Moseley interest.

The law is well settled that one cannot be deemed an innocent purchaser of an interest in real property who buys with knowledge of an outstanding title or of outstanding rights superior to his own; and knowledge of facts sufficient to put a reasonably prudent man upon inquiry, which if followed up with reasonable diligence, would lead to knowledge of such outstanding title or rights, is equivalent to knowledge of the outstanding title or of the outstanding rights themselves. 41 C. J. p. 555; 2 Pomeroy, Eq. Jur. § 597 et seq.; 44 A. L. R. 92, note; Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807; Vercruysse et al. v. Williams, 112 F. 206 (C. C. A. 8); Weniger v. Success Min. Co., 227 F. 548, 557 (C. C. A. 8); Rader v. Star M. & E. Co., 258 F. 599, 604 (C. C. A. 8); Mathis et al. v. Hemingway, 24 F.(2d) 951 (C. C. A. 8); Tanner v. Manos, 160 Ark. 293, 254 S. W. 676.

Applying these principles to the facts as above outlined, we are led irresistibly to the conclusions that Reynolds and Brown were not innocent purchasers of the royalty interest which had already been sold to Moseley; that the deeds from Eula Greer to them were not intended to convey and did not convey to them the interest which Moseley had purchased. The trial court so held, and entered its decree for plaintiff. We are in accord with the holding, and the decree is affirmed.